**Ann D'ORIO, Plaintiff,**

v.

**WEST JERSEY HEALTH SYSTEMS and Barbara Wilson, Defendants.**

**Civ. A. No. 89–2131 (JEI).**

United States District Court, D. New Jersey.

Aug. 10, 1992.

---

**372**

Evan Edward Laine, Cherry Hill, N.J., and Anthony Witlin, Philadelphia, Pa., for plaintiff.

Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, by Marc. L. Hurvitz, Atlantic City, N.J., for defendants.

## OPINION

IRENAS, District Judge:

In this diversity case defendants move for an order, *in limine*, determining that the provisions of N.J.S.A. 39:6A–12 should be applied to bar the plaintiff from introducing at trial evidence of her medical expenses, notwithstanding that her insurance carrier has paid only $10,000 of these expenses. Resolution of this issue depends on a determination of whether N.J.S.A. 17:28–1.4 obligates an insurer who issues a policy to a Pennsylvania resident insuring a vehicle registered in that state to provide personal injury protection ("PIP") required by N.J.S.A. 39:6A–4 where 1) the insured is injured in an accident occurring in New Jersey and 2) New Jersey's PIP coverage exceeds that provided by Pennsylvania law.

*Background*

On January 26, 1988, in Camden County, plaintiff, a Pennsylvania resident driving an automobile registered and insured in that state, collided with a vehicle driven by a New Jersey resident, registered in New Jersey and insured by a policy issued in New Jersey. Plaintiff was insured by Nationwide Insurance Company ("Nationwide") which issued the policy in Pennsylvania but which has at all relevant times been authorized to do business in the State of New Jersey.[1]

---

1. Defendant's moving papers refer to plaintiff's insurer as "Nationwide Ins. Co." with an address in Harrisburg, Pennsylvania and then attach a listing from the New Jersey Insurance Commissioner showing that "Nationwide General Insurance Company" with an address in Columbus, Ohio is authorized to do business in New Jersey. Plaintiff's response to the motion does not contest that his client's carrier is in fact authorized to do business in New Jersey, so the court has assumed that there is no significance to this discrepancy. If plaintiff's insurer were not transacting business in New Jersey there would be no legal basis for defendants' motion.

The individual defendant, Barbara Wilson, was a paramedic employed by the other defendant, West Jersey Health Systems, which owned the vehicle.[2] A deposition of Ms. Wilson filed with the court in connection with a previous proceeding indicates it was a full size van described as a "paramedic vehicle" which was used to carry various types of equipment needed by paramedics.

On July 8, 1992 the court bifurcated the trial and set a trial date on issues of liability only. Five days later defendants stipulated as to liability leaving only damages as an open issue.

Plaintiff has alleged that as a result of the collision she has undergone at least two major back surgeries and sustained medical bills of approximately $100,000. Her policy, which incorporates Pennsylvania's PIP requirements, provided coverage for only $10,000 and plaintiff alleges that the carrier has refused to pay any more.

*Discussion*

In this action plaintiff seeks to introduce evidence with respect to and recover all medical expenses in excess of $10,000. Defendants assert that plaintiff's carrier is obligated to her for up to $250,000 in medical expenses pursuant to N.J.S.A. 39:6A–4 and the "deemer" clause found in N.J.S.A. 17:28–1.4 ("Section 1.4"), which provides in relevant part:

> Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State ... which sells a policy providing automobile or motor vehicle liability insurance ... in any other state ..., shall include in each policy coverage to satisfy at least the ... personal injury protection benefits cover-

age pursuant to [N.J.S.A. 39:6A–4]. ... whenever the automobile or motor vehicle insured under the policy is used or operated in this state.

Section 1.4 goes on to require every New Jersey authorized insurer to file a written certification of compliance with this requirement and, should the insurer forget, also provides that any out-of-state policy will be "construed" as providing this coverage.

Section 1.4 was originally adopted by the New Jersey Legislature in 1985 (L.1985, c. 520, § 18), effective January 21, 1986. This provision was amended in 1988, effective January 1, 1989 (L.1988, c. 119, § 1) to also impose the verbal threshold (N.J.S.A. 39:6A–8(b)) on out-of-state drivers who have accidents in New Jersey. However, that amendment did not change the portions of the law relevant to this motion.[3]

Defendants' argument that Nationwide was obligated to provide the plaintiff with PIP medical expense benefits is accepted by the court, not so much on the sophisticated conflict of laws analysis set forth in defendants' brief,[4] but rather on the simpler premise that Section 1.4 creates a cause of action for an out-of-state resident injured in a New Jersey automobile accident against his own liability insurer for the full PIP benefits provided by N.J.S.A. 39:6A–4, provided the insurer does business in New Jersey. This cause of action exists notwithstanding that such benefits may not be actually included (other than by the metaphysical act of "deeming") in the terms of a policy otherwise issued in conformity with the state of the

---

**2.** Neither the moving nor opposition papers describe the type of "vehicle" defendant was driving.

**3.** Plaintiff's argument that "It is essential to note that the 'Deemer Clause' was effective January 1, 1989, and therefore, was not applicable at the time of the accident which was January 26, 1988" is based on a faulty premise.

**4.** Both parties seem to view the issue as a dispute of whether Pennsylvania law or New Jersey law should apply to the interpretation of the policy issued by Nationwide. Both sides recog-

nize that policies of automobile liability insurance are generally construed in accordance with the law of the place of contract, which in this case would be Pennsylvania. *State Farm Mut. Auto. Ins. Co. v. Simmons Estate,* 84 N.J. 28, 417 A.2d 488 (1980); *Johnson Matthey, Inc. v. Pennsylvania Mfr's Assn. Ins. Co,* 250 N.J.Super 51, 593 A.2d 367 (App.Div.1991). They argue whether the exception in these cases for situations where the overriding policy considerations of another state prevails should result in the application of New Jersey law.

insured's residence.[5]

The right of a state to impose liability on a carrier issuing a policy in another state, where the policy terms do not provide for such liability, has withstood constitutional attack. In *Watson v. Employers Liability Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954) the Supreme Court upheld the enforceability of a Louisiana law which gave persons injured or killed in that state a direct cause of action against the tortfeasor's insurer, even if the policy specifically barred such an action. Louisiana also had its own form of "deemer" clause to cover insurers doing business in Louisiana. *Id.* at 69, fn. 5, 75 S.Ct. at 168, fn. 5.

In rejecting equal protection, due process and full faith and credit arguments levelled against the Louisiana statute, the court note that Louisiana had a strong interest in providing for the treatment and care of residents or non-residents injured in the state:

> Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relative, or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for recovery.

*Id.* at 72, 75 S.Ct. at 170.

Certainly New Jersey has the same interest in Section 1.4 as Louisiana had in its direct action statute. Given the absence of a constitutional infirmity, there is no doubt that the courts of New Jersey would enforce Section 1.4 and, where appropriate, provide New Jersey PIP benefits to a Pennsylvania insured.

A Pennsylvania court has also concluded that it would recognize the cause of action created by Section 1.4. *Smith v. Firemens Ins. Co.*, 404 Pa.Super. 93, 590 A.2d 24 (1991), *appeal den.*, 605 A.2d 334 (Pa.1992) involved an almost identical fact pattern to the case at bar. Smith, a Pennsylvania resident, was involved in an accident in New Jersey. The defendant insurer, which had issued the policy in accordance with Pennsylvania law, promptly paid the $10,-000 PIP benefit required under that state's law. Plaintiff sued for the balance of his medical expenses, arguing that Section 1.4 obligated the carrier to pay up to $250,000 as provided in N.J.S.A. 39:6A–4.

Plaintiff prevailed, the court finding that there was no conflict between Pennsylvania's PIP statute and New Jersey's since both were motivated by a desire to provide accident victims with adequate medical care and that principles of comity dictate following the law of New Jersey. *Id.* 590 A.2d at 27–28. Thus, it appears that plaintiff in this action would have recourse in both New Jersey and Pennsylvania against a carrier refusing to pay New Jersey mandated PIP benefits.[6]

■ Having ruled that Nationwide was obligated to plaintiff for PIP benefits to the extent provided by N.J.S.A. 39:6A–4, we now turn to the applicability of N.J.S.A. 39:6A–12 which bars the admissibility at trial of amounts "collectible or paid" pursuant to such statute.[7] Since, for purposes of this motion, we have assumed that Nationwide has paid plaintiff only a tiny fraction of her medical expenses, the inquiry focuses on the word "collectible."

There may be many reasons that a carrier disputes the payment of PIP benefits to its insured. Such refusal may center on a legal dispute, as has been suggested by plaintiff, or it may deal with issues such as causation or reasonableness. It is even possible that a refusal to pay may in some

---

**5.** On the record before the Court it is unclear whether Nationwide ever complied with N.J.S.A. 17;28–1.4 and the actual terms of the policy are not before the court.

**6.** Given the magnitude of plaintiff's medical bills and the easier proof burden in a no-fault PIP claim, there is no explanation in the record of why plaintiff did not pursue Nationwide for medical costs in excess of $10,000.

**7.** The testimonial bar of N.J.S.A. 39:6A–12 also applies to certain additional PIP benefits payable under N.J.S.A. 39:6A–10. However, since the Section 1.4 deemer clause does not incorporate these benefits, plaintiff would not be barred from introducing evidence related to the type of expenses described in N.J.S.A. 39:6A–10.

manner result from a failure on the part of the insured to properly press the claim.

In *Tullis v. Teial*, 182 N.J.Super. 553, 442 A.2d 1039 (App.Div.1982), the PIP carrier had refused to pay benefits on the ground that the medical expenses were not incurred for injuries related to the accident. At trial plaintiffs were permitted to prove as elements of damage medical expenses not compensated by the PIP insurer. In reversing the trial court, the Appellate Division ruled that the Legislature's use of the word "collectible" meant that it contemplated the possibility that a carrier would not make payments of amounts "legally due." 442 A.2d at 1041. The court went on to rule that "the result reached by the trial judge could lead to a substantial erosion of the benefits of the No Fault Act," and that since the PIP claim and the tort claim were "mutually exclusive," plaintiffs' remedy should have been an action against the PIP carrier. 442 A.2d at 1042.[8] *See also Amaru v. Stratton*, 209 N.J.Super. 1, 506 A.2d 1225 (App.Div.1985).

Since we now hold that a New Jersey court applying its own law (N.J.S.A. 39:6A–12) would bar evidence at trial of amounts paid by plaintiff for medical treatment resulting from the accident, two issues remain: 1) which state's law should apply to the measure of damages recoverable by the plaintiff and 2) does the *Erie* doctrine require a federal court to apply the exclusionary rule embodied in N.J.S.A. 39:6A–12.

A federal court sitting in a diversity case must apply the conflict of law principles of the forum state. *Klaxon Company v. Stentor Electrical Manufacturing Company*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although New Jersey has traditionally applied the rule of *lex loci delicti* in tort cases, *e.g., Marshall v. Geo. M. Brewster & Son, Inc.*, 37 N.J. 176, 180, 180 A.2d 129, 131 (1962), a mechanical application of this rule must give way where there is an important governmental interest of another state involved in the tort. *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967).

In addition to being the forum, New Jersey has the following contacts with this matter: (1) the accident occurred here; (2) the defendant driver lives here; (3) the defendant vehicle owner is incorporated here; and (4) defendants' insurer is licensed to do business here. By contrast, Pennsylvania's only contact with the matter is that plaintiff lives there and purchased her insurance there, albeit from a company authorized to write insurance in New Jersey.

New Jersey certainly has a significant interest in the rights and liabilities of parties and insurers in a motor vehicle accident which occurs in New Jersey. Its police, hospitals, insurance companies and courts all get involved regardless of the residence of one of the drivers. The matter has been the subject of intensive public debate and has resulted in repeated legislative enactments of which N.J.S.A. 39:6A–12 is only a small part. *See e.g.*, L.1985, c. 520; L.1988, c. 119; and L.1990, c. 8. Moreover, the various provisions of law dealing with this subject are interrelated. For instance, the damage limitation embodied in N.J.S.A. 39:6A–12 is directly tied into the partial elimination of subrogation rights now found in N.J.S.A. 39–6A–9.1. *See Aetna Ins. Co. v. Gilchrist Brothers, Inc.*, 85 N.J. 550, 562, 428 A.2d 1254, 1260 (1981).[9] We can find no comparable gov-

---

**8.** The court notes that the author of the *Tullis* opinion was the Honorable Morton I. Greenberg, now sitting on the Third Circuit Court of Appeals.

**9.** We note that this is one motor vehicle accident case where the plaintiff's insurer may have the right to recover PIP payments. Because defendant's vehicle is not an "automobile" (N.J.S.A. 39:6A–2a.), its liability insurer is not required to have PIP coverage under N.J.S.A. 39:6A–4 which applies to every "*automobile* liability insurance policy." (Emphasis supplied).

Thus, defendant may be a tortfeasor who was not, at the time of the accident "required to maintain person injury protection ..." and its liability carrier may be subject to a claim for reimbursement pursuant to N.J.S.A. 39:6A–9.1. *Buoni v. Browning Ferres Industries*, 219 N.J.Super 96, 529 A.2d 1044 (L.Div.1987); *Sherman v. Garcia Const., Inc.*, 251 N.J.Super. 352, 598 A.2d 242 (App.Div.1991). It is not clear from the record whether Nationwide was aware of this possibility when (and if) it refused payment of PIP benefits to plaintiff.

ernmental interest of the State of Pennsylvania which would suggest that its laws, rather than New Jersey's, should apply to the measure of damages recoverable by one of its residents injured in a New Jersey automobile accident.

N.J.S.A. 39:6A–12 has been referred to as an "exclusionary evidence rule," *id.* at 563, 428 A.2d 1254, which raises the issue of whether *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires that it be applied to a diversity case pending in federal court. Generally the Federal Rules of Evidence apply to all cases heard in a federal court, even where the application of the forum state's evidentiary rules would yield a different result on a particular item of proffered evidence. *See* discussion and cases cited in 9 Wright & Miller, *Federal Practice and Procedure* § 2405 (1971 and Supp.1992). While the rationale of these cases vary, it is most often grounded either in the notion that evidence rules are "procedural" rather than "substantive" or on the paramountcy of the Federal Rules of Evidence by virtue of their effectiveness having been dependent on the approval of Congress. *See In re Air Crash Disaster near Chicago*, 701 F.2d 1189, 1193 (7th Cir.1983).

By their express terms the Federal Rules of Evidence yield to state law in at least three specific areas when the rule of decision in the matter is governed by state law: the effect of a presumption (Rule 302); privileges asserted by witnesses (Rule 501); and the competency of witnesses (Rule 601).

However, the federal courts have also held that where a state evidence rule is "intimately bound up" with the rights and obligations being asserted, *Erie* mandates the application of the state rule in a federal diversity suit. *E.g., DiAntonio v. Northampton–Accomack Memorial Hospital*, 628 F.2d 287, 290 (4th Cir.1980); *Conway v. Chemical Leaman Tank Lines, Inc*, 540 F.2d 837, 839 (5th Cir.1976). Although N.J.S.A. 39:6A–12 can be described as a rule of evidence, by limiting the damages recoverable by a plaintiff it is "intimately bound up" with the respective rights of the parties:

> To the extent that the state evidentiary rule defines what is sought to be proved—here, the measure of damages—it may bind the federal court under *Erie* principles.

*In re Air Crash Disaster Near Chicago, Ill* at 1193.

A state's view of the measure of damages "is inseparable from the substantive right of action," (*id.* at 1194), and we hold that *Erie* binds a federal court to apply the limitations contained in N.J.S.A. 39:6A–12 to a diversity negligence action pending in the federal courts.

For the reasons set forth above, defendants' motion *in limine* to bar evidence at trial of medical expenses payable under the PIP provisions of N.J.S.A. 39:6A–4 is granted. An appropriate order will be prepared by the court.