260 N.J. Super. 329 (1992)
616 A.2d 936
GLORIA GIORDANO AND PETER GIORDANO, PLAINTIFFS-APPELLANTS,
v.
ALLSTATE INSURANCE COMPANY AND COMPUTER SCIENCE CORPORATION, DEFENDANTS, AND NEW JERSEY FULL INSURANCE UNDERWRITERS ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1992.
Decided November 23, 1992.
Before Judges GAULKIN, STERN and BROCHIN.
Roy J. Evans argued the cause for appellants (Evans, Hand, Allabough & Amoresano, attorneys).
Jane Kelsey argued the cause for respondent (Reiseman & Sharp, attorneys; John R. Gonzo, on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
*330 Peter Giordano was involved in an accident while driving his employer's 1989 Ford Aerostar minivan. He brought this action to recover personal injury protection (PIP) benefits under an automobile policy issued to his wife by the New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA). A Law Division judge entered summary judgment in favor of NJAFIUA based on a finding that the minivan was not a "private passenger or station wagon type" vehicle within the meaning of the policy and N.J.S.A. 39:6A-2a. We reverse.
Giordano was employed as a sales manager by Elmwood Auto Sales, Inc., a Ford dealership for new and used cars. As part of his compensation, he was issued a demonstration vehicle owned and insured by the dealership and bearing dealer license plates. The vehicle was available at all times to be test-driven by any prospective purchaser; when Giordano was at the showroom, his vehicle was always parked in front, with the "new car sticker" in place, to attract the attention of customers. Giordano testified that "at least 80%" of the use of his vehicle was "work-related," but he was also permitted unrestricted personal use of it. Approximately every six months or 6,000 miles, he would replace the vehicle with a new one. The minivan Giordano was driving at the time of the accident was his then-assigned demonstration vehicle. It was fitted-out to carry seven passengers; it had air conditioning, a stereo sound system, leather bucket seats and carpeting and carried an automobile registration.
The accident occurred on a Sunday, while Giordano was engaged in personal pursuits. Traveling south on West Crescent Avenue in Allendale, he crossed the double yellow line into the northbound lane and struck a fully-loaded dump truck. As a named insured under the NJAFIUA insurance policy issued to his wife covering her own automobile, Giordano demanded PIP *331 benefits payable under the policy to a "named insured" who sustains bodily injury while using "a private passenger automobile."[1] Consistent with N.J.S.A. 39:6A-2a, the policy defines a private passenger automobile as:
a self-propelled vehicle designed for use principally on public roads and which is one of the following types:
(1) a private passenger or station wagon type automobile,
(2) a pickup, panel truck, delivery sedan, van, or
(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes; but
a `private passenger automobile' does not include a motorcycle; an automobile used as a public or livery conveyance for passengers; a pickup, panel truck, delivery sedan, van or utility automobile customarily used for business, occupational or professional purposes other than farming or ranching, or a utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests.
The question is whether the minivan was "a private passenger or station wagon type automobile" or whether it was a "van ... customarily used for business, occupational or professional purposes other than farming or ranching." If it is characterized as "a private passenger or station wagon type automobile" PIP benefits are available notwithstanding that its customary use was for the dealership's business purposes. That is the holding of Wagner v. Transamerica Insurance Company, 167 N.J. Super. 25, 400 A.2d 497 (App.Div.), certif. denied, 81 N.J. 60, 404 A.2d 1159 (1979), which awarded PIP benefits to a new car salesman injured while driving his employer's demonstration car to a prospective purchaser:
... we perceive no legislative design to exclude private passenger vehicles commercially owned and used in business pursuits [from the No-Fault Law, N.J.S.A. 39:6A-1 to 35.]
Id. 167 N.J. Super. at 31, 400 A.2d 497.
On the other hand, although the policy and the statute include a "van" within the definition of "private passenger *332 automobile," they exclude PIP benefits if the van is "customarily used for business, occupational or professional purposes other than farming or ranching." Cf. Cheatham v. Unsatisfied Claim & Judg. Bd., 178 N.J. Super. 437, 442, 429 A.2d 407 (App.Div. 1981) (pickup truck not customarily used in business is an "automobile" for PIP purposes). The Law Division judge found that exclusion applicable here. We disagree.
We can assume, without deciding, that the minivan was "customarily used for business, occupational or professional purposes." But we are satisfied that it was not a "van" as that term is used in the policy and in N.J.S.A. 39:6A-2a. A van is usually understood to be an enclosed vehicle used for the transportation of goods or animals. See Webster's Ninth New Collegiate Dictionary, 1303 (Merriam-Webster, 1986). That is consistent with the grouping of "van" together with "pickup, panel truck, [and] delivery sedan" in the definitional provisions of the policy and the statute. The minivan driven by Giordano was not such a vehicle. Rather, it was designed, equipped and obviously intended to be used precisely as a passenger automobile or station wagon is designed, equipped and used. Indeed, if the term "minivan" were not used in marketing the vehicle, there would be no basis to call it a "van" at all. Marketing terminology, of course, does not determine the coverage provided by the insurance policy or required by the statute.[2] In all relevant respects, the vehicle fit the definition of a station wagon, i.e., a vehicle designed for passenger transportation "that has an interior longer than a sedan's, has one or more rear seats readily lifted out or folded to facilitate light trucking, has no separate luggage compartment, and often has an adjustable rear window and a tailgate." Id. at 1152. The conclusion is unavoidable that the minivan was a "station wagon type" vehicle within the meaning of the insurance policy and the *333 statute. Accord, Insurance Co. of North America v. Coffman, 52 Md. App. 732, 451 A.2d 952 (Ct.Spec.App. 1982); Light v. Miller, 303 Pa.Super. 527, 450 A.2d 51 (1982).
The summary judgment in favor of NJAFIUA is reversed. The matter is remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] N.J.S.A. 39:6A-4.2 provides that "the personal injury protection coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own."
[2] It is interesting, but also of marginal relevance, that in promotional materials for the vehicle, Ford Motor Company describes it as an "Aerostar wagon" as well as a "minivan."