264 N.J. Super. 367 (1993)
624 A.2d 1008
EDWARD ADAMS, PLAINTIFF-APPELLANT,
v.
KEYSTONE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1993.
Decided May 10, 1993.
*368 Before Judges ANTELL, SKILLMAN and VILLANUEVA.
James M. Clancy argued the cause for appellant (Friedman, Bafundo & Porter, attorneys; Mr. Clancy, of counsel and on the brief).
J. Robert McGroarty argued the cause for respondent (Mr. McGroarty, attorney, and on the brief).
*369 Allan J. Nodes, Deputy Attorney General for intervenor Attorney General (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mr. Nodes, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.S.C. (temporarily assigned).
On April 29, 1990, plaintiff Edward Adams was traveling in West Deptford, New Jersey, in a 1986 Ford van and became involved in an accident with a tractor trailer owned by Intercoastal Management. Plaintiff, a domiciliary of Delaware, was the named insured on the policy of insurance issued on the Ford by defendant Keystone Insurance Company ("Keystone"). The Ford was registered in Delaware, and the policy was issued under the laws of Delaware. Keystone was authorized to do business in New Jersey and does, in fact, transact business in this state. Plaintiff made demand of Keystone for personal injury protection ("PIP") benefits over and above the $15,000 provided for in his Delaware policy, pursuant to the provisions of N.J.S.A. 17:28-1.4 and N.J.S.A. 39:6A-4. Keystone denied this request.
Plaintiff filed a complaint demanding that Keystone conform plaintiff's Delaware insurance policy to meet the coverages required by N.J.S.A. 39:6A-4, pursuant to the mandate of N.J.S.A. 17:28-1.4. Keystone filed an answer admitting that there was a valid insurance policy in effect under Delaware law, plaintiff was involved in an automobile accident on April 29, 1990, and Keystone was authorized to transact business in New Jersey. Keystone denied all other allegations.
Plaintiff filed a motion for partial summary judgment contending that under N.J.S.A. 17:28-1.4 Keystone was required to provide additional benefits. Keystone filed a cross-motion for summary judgment to dismiss the complaint.
Plaintiff argued that, pursuant to N.J.S.A. 17:28-1.4, he is entitled to the claimed benefits because the New Jersey statute requires all insurance companies that transact business in New Jersey to conform all of their insurance policies, even if they are *370 not written in New Jersey for New Jersey residents, to provide benefits equivalent to those mandated by the New Jersey no-fault law to cover an accident in New Jersey. Keystone argued that N.J.S.A. 17:28-1.4 statute does not apply to the present situation, and that plaintiff must accept the benefits provided by his Delaware policy. Keystone also argued that N.J.S.A. 17:28-1.4 is unconstitutional. Because the validity of a state statute was questioned, the court granted the Attorney General's motion to intervene. See R. 4:28-4.
Even though the parties requested oral argument, the court rendered its decision in plaintiff's favor without hearing oral argument. Keystone filed a motion for reconsideration and requested oral argument. The matter was then argued and the court denied plaintiff's motion for partial summary judgment and granted Keystone's cross-motion for summary judgment. Plaintiff then appealed. We reverse.

I.
Keystone contends that plaintiff cannot recover because plaintiff's state of residence does not offer such benefits to New Jersey residents and N.J.S.A. 17:28-1.4 should be construed so as to apply only to vehicles registered or principally garaged in New Jersey.
N.J.S.A. 17:28-1.4 sets forth:

Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of section 1 of P.L. 1972, c. 197 (C. 39:6B-1) or section 3 of P.L. 1972, c. 70 (C. 39:6A-3), the uninsured motorist insurance requirements of subsection a. of section 2 of P.L. 1968, c. 385 (C. 17:28-1.1), and personal injury protection benefits coverage pursuant to section 4 of P.L. 1972, c. 70 (C. 39:6A-4) or of section 19 of P.L. 1983, c. 362 (C. 17:28-1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

*371 Any liability insurance policy subject to this section shall be construed as providing the coverage required herein, and any named insured, and any immediate family member as defined in section 14.1 or P.L. 1983, c. 362 (C. 39:6A-8.1), under that policy, shall be subject to the tort option specified in subsection a. of section 8 of P.L. 1972, c. 70 (C. 39:6A-8). [Emphasis supplied.]
This statute clearly requires any insurer authorized to do business in New Jersey to include New Jersey PIP coverage in a policy which is sold in another state whenever the automobile insured under the policy is operated in this state. See Healey v. Allstate Ins. Co., 225 N.J. Super. 172, 177, n. 1, 542 A.2d 4 (App.Div. 1988). N.J.S.A. 17:28-1.4 also mandates that all insurance policies in cases such as plaintiff's automatically be reformed to provide the PIP coverage required under the laws of New Jersey[1].
Keystone's argument that plaintiff should not be entitled to payment from the Fund because his state of residence does not offer such benefits to New Jersey residents lacks merit. Keystone mistakenly relies upon a section of the Unsatisfied Claim and Judgment Fund ("UCJF") law, which provides that benefits under that law shall be available to "a resident of this State or the owner of a motor vehicle registered in this State or a resident of another state ... in which recourse is afforded, to residents of this State, of substantially similar character to that provided for by this act; ..." N.J.S.A. 39:6-62. However, this section applies only to cases where "any person qualified to receive payments under the provisions of the `Unsatisfied Claim and Judgment Fund Law' (Sec. 39:6-61 to -91) suffers bodily injury or death ... caused by a motor vehicle ... and the damages resulting from such accident or death are not satisfied due to the personal injury protection coverage not being in effect with respect to such accident." See N.J.S.A. 39:6-86.1. Such is not the case herein *372 because plaintiff's claim is not made pursuant to UCJF law, but rather is made under N.J.S.A. 17:28-1.4 and, therefore, the definition of qualified person in N.J.S.A. 39:6-62 is not applicable. The only connection that the UCJF has to this case is that pursuant to N.J.S.A. 39:6A-4a[2] it may be required to reimburse an insurer for PIP benefits in excess of $75,000, but that is independent of the UCJF law.
Keystone maintains that N.J.S.A. 17:28-1.4 should be construed to only require payment for the PIP benefits for vehicles "registered or principally garaged" in New Jersey, even if the insurance policy providing the protection is issued in another state because the legislature has, by the N.J.S.A. 17:28-1.4, mandated that "Any liability insurance policy subject to this section shall be construed as providing the coverage required herein." (Emphasis added). That language, Keystone urges, can be interpreted as requiring only that the liability coverage of a given policy comply with the liability coverage limits of N.J.S.A. 39:6B-1 and 39:6A-3 and so construed the statute would serve to protect New Jersey residents and drivers or occupants of cars in New Jersey to assure that an out-of-state tortfeasor would possess at least New Jersey's minimum liability coverage with which to compensate victims of the out-of-state tortfeasor's negligence. Therefore, Keystone concludes that such a construction of the first sentence of the second paragraph of N.J.S.A. 17:28-1.4 in conjunction with a construction of the first paragraph of N.J.S.A. 17:28-1.4 which restricted its scope of operation to vehicles garaged or registered in New Jersey would not justify allowing plaintiff, as a resident of Delaware, to procure unlimited medical expense benefits from the defendant Keystone (up to the first $75,000 less monies paid under Delaware's *373 $15,000 medical expense benefit) and thereafter from the New Jersey Unsatisfied Claim and Judgment Fund[3].
Keystone's reliance upon N.J.S.A. 39:6A-3 and 39:6B-1 is misplaced. The issue in this case is not whether compulsory insurance was required, but rather the nature of Keystone's obligations under N.J.S.A. 17:28-1.4. Even prior to the enactment of N.J.S.A. 17:28-1.4, N.J.S.A. 39:6A-4 provided that PIP benefits must be included in any insurance policy for an "automobile registered or principally garaged in this State ..." See N.J.S.A. 39:6A-3. Clearly, the Legislature did not adopt N.J.S.A. 17:28-1.4 to state exactly the same proposition that it stated in N.J.S.A. 39:6A-3 and 39:6A-4. The trial court ignored the plain language of N.J.S.A. 17:28-1.4, thereby rendering the statute totally meaningless.

II.
Keystone also maintains that Delaware law, and not New Jersey law, should be applied to the present case, citing State Farm Ins. Co. v. Simmons' Estate, 84 N.J. 28, 417 A.2d 488 (1980), where the Court held that
in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy ... unless the dominant and significant relationship of another state to the parties in the underlying issue dictates that the basic rule should yield.

[Id. at 37, 417 A.2d 488.]
Keystone argues that because New Jersey's only contact with the subject accident is as forum state and the situs of the accident, New Jersey courts should apply Delaware law, pursuant to Simmons' Estate, supra, to determine plaintiff's PIP benefits.
*374 This same argument was properly rejected in D'Orio v. West Jersey Health Systems, 797 F. Supp. 371 (D.N.J. 1992), which held that N.J.S.A. 17:28-1.4 creates a cause of action for an out-of-state insured injured in a New Jersey automobile accident against his own liability insurer for full PIP benefits provided by New Jersey law, provided the insurer does business in New Jersey. Id. at 373-74.

III.
N.J.S.A. 17:28-1.4 applies only to "automobiles" which are "used or operated in New Jersey." Keystone maintains that plaintiff's vehicle was not an automobile which is defined as:
[A] private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual ... not customarily used in the occupation, profession or business of the insured other than farming or ranching. ... [Emphasis added].

[N.J.S.A. 39:6A-2a].
As we noted in Giordano v. Allstate Ins. Co., 260 N.J. Super. 329, 616 A.2d 936 (App.Div. 1992), whether or not plaintiff's vehicle was customarily used for business, it was a "station wagon" rather than a "van" as that term is used in N.J.S.A. 39:6A-2a. Id. at 332-33. Keystone concedes that Giordano involved a similar Ford Aerostar minivan.

IV.
Keystone contends that the Legislature has intruded into the court's duties to interpret the construction of insurance contracts by limiting the choice of law rules which courts can use by requiring that "any ... policy subject to this section shall be construed as providing the coverage required herein." Keystone cites to Winberry v. Salisbury, 5 N.J. 240, 244-45, 74 A.2d 406, cert. denied 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950), where the Court discussed the law-making relationship between the *375 legislative and judicial branches and concluded that the judiciary's rule-making power is continuous and should not be subject to legislation that conflicts with a court rule. Keystone also argues that the judiciary, in State Farm Ins. Co. v. Simmons' Estate, supra, already established the choice of law rule that should govern the interpretation of insurance contracts. However, this case involves the adoption of a statute which defines substantive law and not procedure. N.J. Const., art. III, ¶ 1 (Separation of Powers Clause) is clearly not implicated. This clause does not estop the Legislature from enacting laws for the good of the citizens of this state.

V.
Keystone next argues that N.J.S.A. 17:28-1.4 violates notions of due process. U.S. Const., amend. XIV, § 1; N.J. Const., art. 1, ¶ 1. N.J.S.A. 17:28-1.4 confers PIP benefits up to $250,000 to out-of-state drivers insured under an insurance policy issued by a company transacting business in this state who are involved in accidents in New Jersey. N.J.S.A. 39:6A-4a. In exchange for this benefit, N.J.S.A. 17:28-1.4 requires the named insured, as well as any immediate family member, to be subject to the tort options specified in subsection a of N.J.S.A. 39:6A-8, which forbids an injured party to sue for non-economic loss unless at least one of nine enumerated criteria is satisfied.
In Watson v. Employers Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954), the Supreme Court approved the enforcement of a Louisiana law which provided that injured persons could bring a direct cause of action against the tortfeasor's insurance company, even if the policy, drafted under another state's laws, specifically forbade such a suit. The Court rejected equal protection, due process, full faith and credit, and conflict of laws arguments made regarding Louisiana's statute (some of the same arguments raised concerning the subject statute) stating:
Some contracts made locally, affecting nothing but local affairs, may well justify a denial to other states of power to alter those contracts. But, as this case illustrates, a vast part of the business affairs of this Nation does not present such *376 simple local situations ... As a consequence of the modern practice of conducting widespread business activities throughout the entire United States, this Court has in a series of cases held that more states than one may seize hold of local activities which are part of multistate transactions and may regulate to protect interests of its own people, even though other phases of the same transactions might justify regulatory legislation in other states. (Citations omitted). [Id. at 71-72, 75 S.Ct. at 169-70, 99 L.Ed.2d at 81-82.]
See also Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).
In Watson, the Court noted that if the policy in question had been issued in Louisiana, there would have been no arguable due process issue. Because the policy was purchased, issued and delivered outside of Louisiana, the defendant attempted to invoke the due process principle that a state is without power to exercise extra-territorial jurisdiction by attempting to regulate and control activities wholly beyond its boundaries. The Watson Court found that Louisiana's statute was not a mere intermeddling in affairs beyond her boundaries, stating:
Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relatives, or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for recovery of damages. It has a similar interest in policies of insurance which are designed to assure ultimate payment of such damages.
[Watson, supra, 348 U.S. at 72, 75 S.Ct. at 170, 99 L.Ed. at 82.]
The Court further stated:
Of course Massachusetts also has some interest in the policy sued on in this case. The insurance contract was formally executed in that State and Gillette has an office there. But plainly these interests cannot outweigh the interest of Louisiana in taking care of those injured in Louisiana. Since this is true, the Full Faith and Credit Clause does not compel Louisiana to subordinate its direct action provisions to Massachusetts contract rules.
[Id. at 73, 75 S.Ct. at 170, 99 L.Ed. at 82.]
Recently, in D'Orio v. West Jersey Health Systems, supra, the court ruled that a Pennsylvania resident injured in a New Jersey automobile accident was entitled to PIP benefits based on New Jersey law despite limits contained in his Pennsylvania automobile insurance policy. The court further found that the statutory scheme was not constitutionally infirm. Then, referring to the *377 Supreme Court's opinion in Watson, supra, the court found that New Jersey has the same interest in N.J.S.A. 17:28-1.4 as Louisiana had in its "deemer statute." Id., 797 F. Supp. at 374. Thus, application of the deemer statute was upheld.
The same premise has been accepted by the courts of Pennsylvania. In Smith v. Firemens Ins. Co. of Newark, New Jersey, 404 Pa.Super. 93, 590 A.2d 24 (Super.Ct. 1991), appeal denied, 529 Pa. 669, 605 A.2d 334 (1992), a Pennsylvania resident was injured in an automobile accident in New Jersey. Smith's insurance carrier, citing the conflicting laws of the two states, contended that Smith's PIP payments should be limited by the terms of his policy. The policy, written in Pennsylvania under Pennsylvania law, provided only $10,000 of benefits. Smith argued, and the court agreed, that based on N.J.S.A. 17:28-1.4 he was entitled to the unlimited PIP benefits then in effect in New Jersey[4]. The court stated:
[A]pplication of the New Jersey law furthers several of New Jersey's interests, that is, the interest in having out-of-state residents who are injured while travelling on New Jersey highways receive coverage for their reasonable medical expenses; the interest in having the rights of insurance companies authorized to do business in New Jersey governed by New Jersey law; and the interest in having sister states give full faith and credit to its insurance law.

[Smith, supra, 590 A.2d at 27.]
See also Ohio Cas. Ins. Co. v. Continental Ins. Co., 101 Misc.2d 452, 454-55, 421 N.Y.S.2d 317, 319-20 (Supreme Court 1979).
The rationale of these cases is that a state, like New Jersey, has a legitimate interest in its insurance scheme. The Legislature has made a policy judgment to solve the insurance crisis, and the legislation strikes an appropriate balance. Non-resident insured must meet a reasonable threshold in order to receive payment for non-economic loss. In return, non-residents insured by companies transacting business in New Jersey who are injured in New Jersey receive the benefits necessary to provide for their medical treatment. In addition, New Jersey has an *378 interest in ensuring that persons injured in this state receive prompt and proper medical care and in assuring that the medical care facilities and practitioners who provide such care will be paid. The subject statute, designed to lower automobile insurance premiums while ensuring generous PIP benefits, simply furthers the policy objective of N.J.S.A. 39:6A-1 to -35, which is both fair and rational.

VI.
Keystone also contends that N.J.S.A. 17:28-1.4 violates the Contract Clause of both the United States and New Jersey constitutions because the statute allegedly alters the terms and conditions and substantially impairs the obligations of the insurer under its insurance contract. See U.S. Const. art. I, § 10; N.J. Const. art. 4, § 7, ¶ 3. Because N.J.S.A. 17:28-1.4 was adopted prior to plaintiff's contract of insurance, it did not alter the terms of insurance. In addition, a state statute which gives an injured person a right of direct action against the tortfeasor's liability insurer, contrary to a contractual "no action" clause in an insurance policy, does not violate the Contract Clause of the United States Constitution forbidding states to impair the obligation of contracts, where the statute became effective before the insurance contract was made. Watson v. Employers Liability Assur. Corp., supra, 348 U.S. at 70, 75 S.Ct. at 168, 99 L.Ed. at 81.
The legislation is justified by a significant and legitimate public purpose. Therefore, N.J.S.A. 17:28-1.4 is constitutional.
Reversed.
NOTES
[1] Furthermore, each insurer authorized to transact or transacting automobile or motor vehicle insurance business in this state and subject to the provisions of the Act must file and maintain with the New Jersey Department of Insurance written certification of compliance with the Act. Keystone has not filed the required certification.
[2] See N.J.S.A. 39:6A-4a, which provides: "... In the event [medical expenses] benefits paid by an insurer pursuant to this subsection are in excess of $75,000 on account of personal injury to any one person in any one accident, such excess shall be paid by the insurer in consultation with the Unsatisfied Claim and Judgment Fund Board and shall be reimbursable to the insurer from the Unsatisfied Claim and Judgment Fund ..."
[3] Actually, N.J.S.A. 39:6A-4a was amended effective March 12, 1990, from payment of all reasonable medical expenses incurred to "an amount not to exceed $250,000 per person per accident." L. 1990, c. 8, § 4.
[4] See footnote 3, supra.