707 A.2d 1037

ESTATE OF CAREY LEEMAN, PLAINTIFF–RESPONDENT, v. EAGLE INSURANCE COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1998—Decided March 9, 1998.

526

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRIGUEZ.

*Maureen M. Johnston,* argued the cause for appellant (*Law Offices of Robert M. Sanderford,* attorney; *Ms. Johnston,* on the brief).

*John S. Hoyt, III,* argued the cause for respondent (*Hoyt & Hoyt, P.C.,* attorneys; *Mr. Hoyt,* on the letter-brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiff, Estate of Carey Leeman ("Estate"), filed for arbitration with the American Arbitration Association ("AAA"), seeking personal injury protection ("PIP") benefits under the automobile policy issued to decedent by defendant, Eagle Insurance Company

("Eagle"). Decedent's medical bills and other relevant discovery was exchanged in preparation for arbitration. On February 2, 1996, Eagle filed an action in the Law Division seeking to enjoin the arbitration proceedings. Eagle asserted that the AAA did not have jurisdiction over the coverage issues presented and sought a declaratory judgment that Eagle did not cover the vehicle decedent was driving at the time of the accident. The Estate took the position that the only issue was whether decedent, at the time of his accident, was driving a vehicle being used for personal, non-commercial purposes, and that the arbitrator could decide this. Thereafter, Eagle expressed a willingness to withdraw its complaint thereby allowing the coverage issue to go before the arbitrator. However, the Estate's counsel then decided to pursue the matter as a PIP suit in Superior Court, rather than in arbitration.

On March 19, 1996, the Estate filed a Complaint for Declaratory Judgment in the Law Division, seeking an order "declaring [decedent] ... to be entitled to PIP benefits together with any and all recoverable attorney's fees, interest and costs of suit ..." Eagle answered on or about May 23, 1996.

On November 13, 1996, Eagle moved for summary judgment. Thereafter, the Estate cross-moved for summary judgment. The judge denied both summary judgment motions without prejudice so that the parties could conduct further discovery on the issue of what policy form was applicable. Subsequently, both parties renewed their summary judgment motions. On May 2, 1997, oral argument was heard. The Estate stipulated that the policy language that Eagle's counsel offered would control the court's interpretation of coverage. The judge ultimately held that the Estate was entitled to PIP benefits and entered an order to this effect.

On or about May 14, 1997, the Estate submitted an Affidavit of Services and Costs along with a proposed form of order under the "Five Day Rule," *Rule* 4:42–1(c). The order provided for $82,-713.13 in medical expenses and interest, and attorney's fees of $16,425.50, for a total of $99,138.63. Eagle objected to the pro-

posed order on the grounds that the only relief that the Estate was entitled to was a declaratory judgment on the specific PIP entitlement issue, and not an award of medical expenses. Eagle's counsel argued that the medical bills had not been subjected to the medical fees schedule as required by *N.J.A.C.* 11:3–29.4, that several of the benefits were incorrectly computed, and that interest was incorrectly calculated because it was based on an improper total outstanding amount. Eagle's counsel also contended that the attorney's fees requested were excessive. The judge signed the proposed order, reducing the monetary award to $95,689.63, apparently adjusting for an overstated funeral expense benefit assessment. Eagle appeals.

Decedent was involved in a single-vehicle accident on June 7, 1994, while driving a Ford Ranger XLT pick-up truck, owned by his employer, Eastern States Property Management Service ("ESPMS"). Decedent suffered fatal injuries when, while on his way home, the vehicle went out of control, left the roadway, and flipped over.

Four days prior to his accident, on June 3, 1994, decedent dropped off his personal car, a 1968 Chevrolet, at a repair shop. That same day, decedent's employer, ESPMS, loaned him the pick-up truck "because [decedent's] . . . vehicle was broken down." ESPMS stated it was not common practice for it to loan vehicles to employees; however, an exception was made and the vehicle was loaned to decedent so he could get to and from work.

At the time of the accident, decedent's private passenger vehicle was insured by Eagle. The policy included $250,000 in PIP coverage. The Estate sought PIP benefits from Eagle on the basis that decedent was driving a "temporary substitute vehicle" at the time of his accident because his vehicle was inoperable. Eagle responded that it was only required to pay under the $10,000 extended medical expense benefit ("Med–Pay") portion of decedent's policy. Eagle concluded that PIP benefits were not payable because decedent was injured while driving a commercial vehicle he did not own or regularly use.

Two provisions of decedent's policy are alleged to be applicable to this issue. The first is the following definition of "private passenger automobile," found in the "Personal Injury Protection Endorsement" of decedent's policy:

a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) a private passenger or station wagon type automobile,

(2) a van, *a pick-up* or panel *truck* or delivery sedan, or

(3) a utility automobile designed for personal use as a camper or motor home or for family recreational purposes; but

a private passenger automobile does not include a motorcycle; an automobile used as a public or livery conveyance for passengers; *a pick-up, panel truck, delivery sedan, van or utility automobile customarily used for business, occupational or professional purposes;* other than farming or ranching; or a utility automobile customarily used for the transportation of passengers other than members of the user's family or other guests.

[Emphasis added.]

The second is the definition for "Your Covered Auto," as found under the "Personal Auto Policy" portion of decedent's policy to include:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto; or

   b. a pickup or van that:

      (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

      (2) is not used for the delivery or transportation of goods and materials unless such use is

      (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

      (b) for farming or ranching.

   . . .

3. Any "trailer" you own.

4. Any *auto* or "trailer" *you do not own* while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

   e. destruction.

[Emphasis added.]

The motion judge, in granting the Estate's summary judgment motion, based her determination on the reasoning that "private passenger automobile" had a specifically defined meaning under the policy and was only a sub-part of one of the four categories found under the definition of "your covered auto." The judge found that if the policy writers had intended "auto" in category 4, relating to temporary substitute vehicles, to mean "private passenger automobile," the precise language should have been used. The judge also noted that the term "auto" was not specifically defined anywhere in the policy and, thus, should be construed broadly to provide and effectuate coverage. Thus, the judge ruled that PIP benefits were provided because the vehicle decedent was driving qualified for coverage under category 4 of "your covered auto."

The judge did not specifically rule on whether the pick-up met the definition of "automobile" under *N.J.S.A.* 39:6A–2. Under *N.J.S.A.* 39:6A–2, "automobile" is defined as:

a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and *a motor vehicle with a pickup body,* a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes *owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching.* An automobile owned by a farm family copartnership or corporation, which is principally garaged on a farm or ranch and otherwise meets the definitions contained in this section, shall be considered a private passenger automobile owned by two or more relatives resident in the same household.

[*N.J.S.A.* 39:6A–2(a) (emphasis added).]

On appeal, Eagle argues that the judge erred in its decision because 1) *N.J.S.A.* 39:6A–2(a) clearly defines what constitutes an automobile entitled to PIP benefits, and that the vehicle driven by decedent at the time of his accident does not fall under this definition; 2) the Med–Pay benefits satisfied Eagle's duty to the Estate; 3) decedent's policy cannot be properly interpreted to provide PIP coverage for an injured insured driving a substitute commercial vehicle; and 4) the Estate was not entitled to mone-

tary relief or excessive and unreasonable attorney's fees as part of their declaratory judgment action.

Under *Rule* 4:46, summary judgment must be granted if:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

[*R.* 4:46-2(c).]

In *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A*.2d 146 (1995), the Court articulated a new rule for determining whether there is a genuine issue of material fact for trial. The standard requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict pursuant to either 4:37-2(b), 4:40-1, or 4:40-2. *Brill, supra,* 142 *N.J.* at 536, 666 *A*.2d 146. The judge must decide whether

the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party ... If there exists a single unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46-2.

[*Id.* at 540, 666 *A*.2d 146.]

Under the language of decedent's insurance policy, the pick-up driven by decedent at the time of his accident would fall under the definition of a private passenger automobile as long as it was not customarily used "for business, occupational or professional purposes; other than farming or ranching." This is different language than the definition of "automobile" under *N.J.S.A.* 39:6A–2(a). The policy language does not restrict the commercial vehicles exception to those used in the occupation, profession, or business *of the insured,* as the statute limits it. All insurance policies must conform with statutory mandates, and additional exclusions or eligibility requirements may not be imposed. *Motor Club of America Ins. Co. v. Phillips,* 66 *N.J.* 277, 286, 330 *A*.2d

360 (1974); *Fellippello v. Allstate Ins. Co.*, 172 *N.J.Super.* 249, 261–62, 411 *A.*2d 1137 (App.Div.1979), *certif. denied,* 85 *N.J.* 481, 427 *A.*2d 574 (1980); Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law,* § 6:1 at 73 (1998). The PIP statute controls when it conflicts with an insurance policy, even if the Insurance Commissioner approves the policy's language. *CSC Ins. Services v. Graves,* 293 *N.J.Super.* 244, 679 *A.*2d 1244 (Law Div.1996). The lower court properly found that policy language "has to be conformed or deemed to be conformed with the statute." Thus, the basic issue on appeal is whether the pick-up truck, as used by decedent at the time of the accident, is an automobile as defined under *N.J.S.A.* 36:6A–2(a).

" '[T]he meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms.' " *Sheeran v. Nationwide Mutual Insurance Co.*, 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979) (quoting *Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917)); *accord Bello v. Hurley Limousines, Inc.,* 249 *N.J.Super.* 31, 36, 591 *A.*2d 1356 (1991). In any event, the No–Fault Insurance Act should be construed liberally to effectuate its remedial purposes. *N.J.S.A.* 39:6A–16; *Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981); *Gambino v. Royal Globe Ins. Cos.,* 86 *N.J.* 100, 108, 429 *A.*2d 1039 (1981); *Fellippello, supra,* 172 *N.J.Super.* at 261–62, 411 *A.*2d 1137.

The plain language of *N.J.S.A.* 39:6A–2(a) provides that pick-up trucks may be considered "automobiles" unless they are customarily used in the occupation, profession, or business of the insured, other than for farming or ranching. In *Cheatham v. Unsatisfied Claim & Judg. Bd.,* 178 *N.J.Super.* 437, 443, 429 *A.*2d 407 (App. Div.1981), we strictly construed the commercial/personal distinction for pick-up trucks. In *Cheatham, supra,* plaintiff sought PIP benefits from the Unsatisfied Claim and Judgment Fund after he was struck and injured by a pick-up truck while riding a bike. *Id.* at 439, 429 *A.*2d 407. Defendant used the pick-up truck for

personal transportation to and from work and to occasionally carry supplies to and from job sites. *Id.* at 440, 429 *A.*2d 407. The issue presented called for interpreting *N.J.S.A.* 39:6A–2(a)'s definition of "automobile." We held that the pick-up was not customarily used in defendant's occupation as it "was no more associated with [defendant's] ... occupation, profession or business than a bus, had he availed himself of public transportation. There was no direct relation between the use to which the pickup was put and ... [defendant's business]." *Id.* at 443, 429 *A.*2d 407.

The Ford Ranger is a "pick-up" truck and the only issue is whether the truck was customarily used in decedent's occupation, profession, or business. The decedent did not customarily use the Ranger as part of his daily work routine. The record shows that decedent's employer specifically allowed decedent to borrow the car "because his vehicle was broken down" and because decedent needed to get to and from work. Decedent used the vehicle for this purpose for four days. His use of the vehicle was no more associated with his occupation, profession, or business than if he had simply availed himself of public transportation. *Id.* at 443, 429 *A.*2d 407. There is no evidence that decedent was using the vehicle in direct relation with his occupation, profession or business. *Cheatham, supra,* 178 *N.J.Super.* at 443, 429 *A.*2d 407. Thus, the pick-up truck used by decedent at the time of his accident is an automobile as defined under *N.J.S.A.* 39:6A–2(a).

In light of our holding, we need not consider the Estate's argument, adopted by the Law Division judge, that the term "auto" under the temporary substitute vehicle provision of decedent's policy encompasses the vehicle and its use at the time of the accident.

The Law Division judge entered an order in favor of the Estate for $95,689.63, covering both a monetary award for PIP benefits and interest, as well as an award for attorney's fees and costs. Eagle argues that the Estate was not entitled to a judgment because it failed to specifically request such an order as part of their complaint for declaratory relief. Eagle maintains that the

Estate only asked for a declaration that the Estate was entitled to PIP benefits. Eagle also contends that the lower court incorrectly computed the award. Finally, Eagle contends that the attorney's fees and costs award was unreasonable and excessive.

In its affidavit of services and proposed form of order submitted under the "Five Day Rule," the Estate requested: 1) medical expense benefits ($47,266.36); 2) funeral expense benefits ($5,449.00); 3) lost wage benefits ($10,400.00); 4) death benefits ($10,000.00); 5) essential services benefits ($8,760.00); 6) interest on the total of the previous five amounts (10,625.77); 7) attorney's fees and costs ($16,425.50); 8) less the amount Eagle paid as Med–Pay ($9,788.00), for a total of $99,138.63.

Eagle objected to the Estate's proposed form of order for several reasons, including: 1) that Eagle had not yet had the opportunity to review the medical fee schedule as set forth in *N.J.A.C.* 11:3–29.4; 2) that the Med–Pay amount listed by the Estate failed to take into account any co-pay or deductible that would now be permissible based on the court's findings that PIP payments were due; 3) that the funeral expense benefits should only be $1,000, as authorized by *N.J.S.A.* 39:6A–4(e) and under the policy; 4) that the lost wages benefits should only be $5,200 as authorized by *N.J.S.A.* 39:6A–4(b) and under the policy; 5) that the essential services benefits should only be $4,380 as authorized by *N.J.S.A.* 39:6A–4(c) and under the policy; 6) that the statutory interest calculation was incorrect because it was based on an improper total of the above-stated amounts; and 7) that any award for attorney's fees and costs would be improper under the circumstances of the case.

The Estate, as part of their complaint for declaratory judgment, demanded "declaratory judgment in the form of an Order declaring [decedent] ... to be entitled to PIP benefits together with any and all recoverable attorney's fees, interest and costs of suit ..." We find it proper for the Law Division to provide monetary relief, however, the computation must be accurate and the award of attorney's fees and costs may not be unreasonable or excessive.

The record here is insufficient as to the basis for the awards. We, therefore, must remand for a hearing and for proper findings.

■ The Estate's calculation does not appear to consider the medical fee schedule as authorized in *N.J.A.C.* 11:3–29.4. Eagle objected to the fact that it was not given the opportunity to have the medical bills adjusted to reflect the medical fee schedule. Medical fee schedules are pertinent to the determination of medical fees charged. *Thermographic Diagnostics, Inc. v. Allstate Ins. Co.*, 125 *N.J.* 491, 516, 593 *A.2d* 768 (1991). Thus, the judge should have allowed Eagle to adjust decedent's medical bills to reflect the relevant fee schedule. On remand, this is the course of action to be taken.

The hearing must also clarify the awards for funeral expense benefits, lost wages benefits, and essential services benefits, as there is conflict on these issues. *See N.J.S.A.* 39:6A–4(b),(c) & (e). The statutory interest award must be based on a proper calculation of the total PIP award.

The Estate's argument that Eagle is estopped from challenging the court's computation of PIP benefits because Eagle failed to question or challenge the medical bills and expenses during either the discovery phase of the aborted arbitration proceeding or the discovery phase of the current litigation is clearly without merit. *R.* 2:11–3(e)(1)(E).

■ Under *N.J.S.A.* 39:6A–5(c),[1] reasonable attorney's fees and costs *must* be awarded to a successful claimant in arbitration. There is no similar statutory provision for a PIP action brought in Superior Court. However, *Rule* 4:42–9(a)(6), which allows for attorney's fees "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant," is authority for permitting awards of attorney's fees and costs. *See* Pressler, *Current New Jersey Court Rules,* Comment 2 on *R.* 4:42–9(a)(6);

---

[1] Now *N.J.S.A.* 39:6A–5(h), applicable only to accidents occurring after January 10, 1996 and, thus, not applicable to this case.

*Maros v. Transamerica Ins. Co.,* 76 *N.J.* 572, 579, 388 *A.*2d 971 (1978); *Brewster v. Keystone Ins. Co.,* 238 *N.J.Super.* 580, 586–87, 570 *A.*2d 468 (App.Div.1990); Craig & Pomeroy, *New Jersey Auto Insurance Law,* § 10:5–2 at 150.

An award for attorney's fees and costs is at the court's discretion. *Zyck v. Hartford Ins. Group,* 150 *N.J.Super.* 431, 435, 375 *A.*2d 1232 (App.Div.), *certif. denied,* 75 *N.J.* 521, 384 *A.*2d 501 (1977). Except in extraordinary circumstances, an award of attorney's fees will not be disturbed on appeal. *Hermann v. Rutgers Cas. Ins. Co.,* 221 *N.J.Super.* 162, 168–69, 534 *A.*2d 51 (App.Div. 1987).

■ There are seven basic factors that a court can utilize to determine whether or not to award attorney's fees, including: "(1) the insurer's good faith in refusing to pay the demands; (2) excessiveness of plaintiff's demands; (3) bona fides of one or both of the parties; (4) the insurer's justification in litigating the issue; (5) the insured's conduct in contributing substantially to the necessity for the litigation on the policies; (6) the general conduct of the parties; and (7) the totality of the circumstances." *Enright v. Lubow,* 215 *N.J.Super.* 306, 313, 521 *A.*2d 1300 (App.Div.1987) (citations omitted), *certif. denied,* 108 *N.J.* 193, 528 *A.*2d 19 (1987). Because of the lack of findings, on remand, the judge shall reconsider this issue and enter a new award in accordance with the appropriate authority.

The portion of the order declaring PIP coverage is affirmed. The monetary portions of the order, including the award of attorney's fees, is reversed and remanded.