9 A.3d 1101 (2011)
417 N.J. Super. 403
Jose C. PEREZ, Marta A. Perez, and Sarah E. Perez, a minor by her Parents/Guardians Ad Litem Jose C. Perez and Marta A. Perez, Plaintiffs-Respondents,
v.
FARMERS MUTUAL FIRE INSURANCE COMPANY OF SALEM COUNTY, Defendant-Respondent, and
Encompass Property & Casualty Insurance Co. of New Jersey, Defendant-Appellant.
Docket No. A-0490-09T3.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 2010.
Decided January 11, 2011.
Jeffrey A. Oshin, Springfield, argued the cause for appellant (Hardin, Kundla, McKeon & Poletto, *1102 attorneys; Mr. Oshin, of counsel and on the brief).
David K. Chazen, Englewood, argued the cause for respondents Jose C. Perez, Marta A. Perez, and Sarah E. Perez (Chazen & Chazen, attorneys; Mr. Chazen, on the brief).
Andrew M. Lusskin, Livingston, argued the cause for respondent Farmers Mutual Fire Insurance Company of Salem County (Braff, Harris & Sukoneck, attorneys; Mr. Lusskin, on the brief).
Before Judges SKILLMAN, YANNOTTI and ESPINOSA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether a fifteen-passenger van owned by a church, which it used to transport members of the congregation to church services, falls within the definition of an "automobile" contained in N.J.S.A. 39:6A-2(a), thus requiring the van's insurer to provide coverage for personal injury protection (PIP) benefits. We conclude that such a vehicle does not constitute an "automobile" under this definition.
Iglesia Pentecostal Roca de Salvacion, Inc., a church located in Paterson, was the owner of the van. The church insured the van under a commercial automobile insurance policy issued by defendant Farmers Mutual Fire Insurance Company of Salem County (Farmers). This policy did not provide PIP coverage for the van.
The church used the van to transport its members to services. Plaintiff Jose Perez, a member of the church, drove the van on a regular basis for this purpose over a period of ten years.
Perez had a personal automobile insurance policy for his own car, which provided coverage for PIP benefits, issued by defendant Encompass Property and Casualty Insurance Company of New Jersey (Encompass). However, this coverage was only applicable to "bodily injury . . . caused by an accident arising out of the ownership, maintenance or use . . . of an auto as an automobile."
On April 3, 2009, Perez was involved in an accident with another vehicle while driving his wife Marta, his daughter Sarah, and several other church members to services in the van. The Perezes all suffered serious injuries in the accident, for which they sought PIP benefits from Farmers and Encompass. Although Encompass paid the Perezes $10,000 in "Med-Pay" benefits, both insurers disclaimed coverage for PIP benefits.
The Perezes then brought this declaratory judgment action for a determination that the Farmers and Encompass policies both provide coverage for PIP benefits for the injuries they suffered in the accident. The case was brought before the trial court by an order to show cause.
The court determined on the return date that the church van was an "automobile" within the intent of N.J.S.A. 39:6A-2. However, the court concluded that only Encompass was liable for the payment of PIP benefits to the Perezes, apparently because the policy Farmers issued to the church was a commercial policy that did not provide PIP coverage. Consequently, the court entered an order dismissing Farmers from the action.
Encompass filed a motion for reconsideration, which the trial court denied. As a result, Encompass was determined to be solely responsible for the payment of PIP benefits to the Perezes. The trial court set forth the reasons for its rulings in a written decision dated September 30, 2009. *1103 A final judgment memorializing these rulings was entered on April 5, 2010.
Encompass appeals, arguing that the church van was not an "automobile" within the intent of N.J.S.A. 39:6A-2(a) and the Encompass policy, and in the alternative, if the van was an automobile, that Farmers would also be responsible for payment of PIP benefits to the Perezes and therefore should be required to contribute its pro rata share of such benefits.
We conclude that the church van was not an "automobile" and therefore neither Encompass nor Farmers are responsible for the payment of PIP benefits to the Perezes. Consequently, there is no need to consider the other arguments presented by Encompass.
N.J.S.A. 39:6A-4 provides in pertinent part that "every standard automobile liability insurance policy . . . shall contain [PIP] benefits . . . to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying . . . or using an automobile, . . . and to other persons sustaining bodily injury while occupying. . . or using the automobile of the named insured, with permission of the named insured." Any insurance policy must conform with the requirements of N.J.S.A. 39:6A-4, and if it fails to do so, it will be "deemed to be conformed with [this] statute." Estate of Leeman v. Eagle Ins. Co., 309 N.J.Super. 525, 533, 707 A.2d 1037 (App.Div.1998). Thus, if the van involved in the accident in which the Perezes suffered personal injuries was an "automobile," Farmers would not be relieved of responsibility for payment of PIP benefits simply because the policy it issued to the church was a commercial automobile policy that did not provide coverage for PIP benefits.
The definition of "automobile" in N.J.S.A. 39:6A-2(a) sets forth two categories of motor vehicles for which, subject to certain exclusions, coverage for PIP benefits is required: first, "private passenger automobile[s] of a private passenger or station wagon type," and second, a variety of other types of motor vehicles, including "van[s]." See N.J. Mfrs. Ins. Co. v. Hardy, 178 N.J. 327, 334, 840 A.2d 231 (2004). This definition states in pertinent part:
"Automobile" means [1] a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and [2] a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching.
[N.J.S.A. 39:6A-2(a).]
Thus, an insurance policy for a motor vehicle that is categorized as a "private passenger automobile of a private passenger or station wagon type" must provide PIP coverage unless the vehicle is used for one of two specifically described business operations: (a) "a public or livery conveyance for passengers," or (b) "rented to others with a driver." An insurance policy for one of the enumerated types of motor vehicles in the second category, including a "van," also may be required to provide PIP coverage, but only subject to certain conditions. Specifically, the vehicle must be (1) "owned by an individual or by husband and wife who are residents of the same household," and (2) not be "customarily used in the occupation, profession or business of the insured other than farming or ranching."[1]
*1104 Thus, the evident objective of this definition of "automobile" is to assure that policies insuring motor vehicles that are customarily used as private passenger automobiles by individuals and families include PIP coverage. Most such vehicles fall within the category of a "private passenger automobile of a private passenger or station wagon type," which is described in the first part of the definition of "automobile." However, the second part of the definition recognizes that certain other types of motor vehicles, such as pickup trucks, delivery sedans, vans, and campers, are also sometimes used as private passenger vehicles. Consequently, the definition encompasses these other type of vehicles, but subject to more narrowly drawn conditions than apply under the first part of the definition. Therefore, in determining whether a particular type of motor vehicle is a "private passenger automobile of a private passenger or station wagon type" or one of the other types of motor vehicles described in the second part of the definition, such as a van, the threshold question is whether the type of vehicle is customarily used as a private passenger vehicle or for other purposes.
This was essentially the approach to the interpretation of N.J.S.A. 39:6A-2(a) we followed in Giordano v. Allstate Insurance Company, 260 N.J.Super. 329, 616 A.2d 936 (App.Div.1992), in concluding that a "minivan," which could carry up to seven passengers, was a "station wagon type" vehicle that fell within the first part of the definition of "automobile":
[The minivan] was designed, equipped and obviously intended to be used precisely as a passenger automobile or station wagon is designed, equipped and used. Indeed, if the term "minivan" were not used in marketing the vehicle, there would be no basis to call it a "van" at all. Marketing terminology, of course, does not determine the coverage provided by the insurance policy or required by the statute. In all relevant respects, the vehicle fit the definition of a station wagon, i.e., a vehicle designed for passenger transportation "that has an interior longer than a sedan's, has one or more rear seats readily lifted out or folded to facilitate light trucking, has no separate luggage compartment, and often has an adjustable rear window and a tailgate." The conclusion is unavoidable that the minivan was a "station wagon type" vehicle within the meaning of the insurance policy and the statute.
[Id. at 332-33, 616 A.2d 936 (footnote and citation omitted).]
The church van involved in this case is a completely different type of motor vehicle than the minivan the court in Giordano concluded was a "station wagon type" vehicle. As described by plaintiffs, the church van "had five rows of seats" and was designed to carry up to fifteen passengers. Although there may be some large families that use such vehicles for private passenger purposes, this is not their customary use. This type of van is *1105 more commonly used by hotels, automobile rental companies, and other business operations to transport customers, similar to the use that would be made of a small bus. Thus, unlike a minivan or SUV, which today serve the same function a station wagon served when the No Fault Law, including N.J.S.A. 39:6A-2(a), was enacted in 1972, L. 1972, c. 70, the type of van owned by the church is not used primarily as a private passenger vehicle. Therefore, it is not a "private passenger automobile of a private passenger or station wagon type" within the intent of the first part of the definition of "automobile" in N.J.S.A. 39:6A-2(a). Instead, this vehicle is a "van" that falls under the second part of the definition of "automobile."
We recognize that the court in Giordano, in addition to concluding that a minivan is a private passenger automobile because it is the functional equivalent of a station wagon, also stated, citing Webster's Ninth New Collegiate Dictionary 1303 (Merriam-Webster, 1986), that "[a] van is usually understood to be an enclosed vehicle used for the transportation of goods or animals." 260 N.J.Super. at 332, 616 A.2d 936. However, other dictionaries define "van" more broadly to include vehicles that are used to transport people. For example, the American Heritage Dictionary of the English Language (4th ed. 2000) defines "van" as "1.a. An enclosed boxlike motor vehicle having rear or side doors and side panels especially for transporting people. b. A covered or enclosed truck or wagon often used for transporting goods or livestock." We believe that this definition, which encompasses a vehicle used for transporting people, more accurately describes the commonly understood meaning of "van" than the dictionary definition cited in Giordano. Therefore, we conclude that the church van being operated by Jose Perez at the time of the April 3, 2009 accident was a "van," for which PIP coverage was required to be provided only if the conditions set forth in the second part of the definition of "automobile" in N.J.S.A. 39:6A-2(a) were satisfied.
One of those conditions, as previously noted, is that the vehicle must be "owned by an individual or by a husband and wife who are residents of the same household." The church van clearly did not satisfy this condition because it was owned by the church rather than by an individual or by a husband and wife.
We recognize that the court held in Leeman, supra, 309 N.J.Super. at 533-34, 707 A.2d 1037, that a pickup truck was an "automobile" within the second part of the definition set forth in N.J.S.A. 39:6A-2(a), even though the statement of facts in that opinion indicates that the vehicle was owned by a corporation, id. at 529, 707 A.2d 1037. However, the only issue in that case was whether the vehicle was "customarily used in the occupation, profession or business of the insured." No argument was presented that the vehicle did not satisfy the condition of ownership "by an individual or by a husband and wife who are residents of the same household." Thus, Leeman has no precedential value regarding the application of this ownership condition.
It is clear to us from the plain language of N.J.S.A. 39:6A-2(a), reinforced by the legislative history outlined in footnote one of this opinion, that a vehicle which falls under the second part of the definition must satisfy this ownership condition to be an "automobile," which the church van did not do. Therefore, Farmers was not required to include PIP coverage in the policy it issued to the church.[2]
*1106 Furthermore, although the automobile insurance policy Encompass issued to the Perezes for their own personal automobile was required to include coverage for PIP benefits, the policy was not required to extend PIP coverage for the injuries the Perezes suffered in the accident involving the church van. N.J.S.A. 39:6A-4 only mandates payment of PIP "to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying . . . or using an automobile" (emphasis added), and for all the reasons previously stated, the church van was not an "automobile" under the definition set forth in N.J.S.A. 39:6A-2(a). We note, finally, that the Perezes do not contend that the scope of PIP benefits provided under the Encompass policy was any broader than required by N.J.S.A. 39:6A-4.
Accordingly, we affirm the dismissal of the complaint against Farmers, and we reverse the judgment against Encompass.
NOTES
[1] We note that these conditions were part of the original version of N.J.S.A. 39:6A-2 enacted in 1972, L. 1972, c. 70, § 2. The only motor vehicles to which the second part of the definition of "automobile" applied in the original version were "a pick-up body, a delivery sedan or a panel truck." Ibid. In subsequent amendments, "a camper type vehicle used for recreational purposes," L. 1972, c. 203, § 1, and "a van," L. 1983, c. 362, § 6, were added to the types of motor vehicles listed in the second part of the definition. These amendments did not change the ownership and use conditions a motor vehicle must satisfy to qualify as an "automobile" under the second part of the definition set forth in N.J.S.A. 39:6A-2(a).
[2] Since the ownership condition of PIP coverage under the second part of the definition of automobile was not satisfied, there is no need to consider whether such coverage also would have been excluded because the van was "customarily used in the . . . business of the insured," i.e., the transportation of church members to and from services.