98 N.J. Super. 154 (1967)
236 A.2d 402
ALLSTATE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
VINCENT MELONI, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1967.
Decided December 8, 1967.
*156 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Edgar E. Moss, II for appellants (Messrs. Moss & Powell, attorneys).
*157 Mr. Michael Patrick King for respondent (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendants Vincent Meloni and Marion Meloni appeal from a judgment declaring void a certain policy of insurance issued by plaintiff Allstate Insurance Company (Allstate).
On or about April 2, 1964 Mrs. Meloni, having purchased a used Rambler automobile, applied to Allstate for insurance coverage thereon. Its agent, Froio, called at her home with an application which, when completed, was to become part of the policy. One of the questions (declarations) contained in the application was: "With respect to the applicant or any member of his household; * * * Has any license or permit to drive any automobile been revoked, suspended, or refused?" To this question Mrs. Meloni answered, "No." When the application had been completed, and after she had allegedly "glanced" at it "briefly", she signed it. The policy here involved was subsequently issued.
Actually, Mrs. Meloni's husband Vincent had had two previous suspensions of his New Jersey driver's license, the first in December 1962 for a point system violation, and the second on January 16, 1964 for failure to maintain proof of financial responsibility. He continued to be without a driver's license during the period here involved. The Rambler which Allstate covered had been purchased in Mrs. Meloni's name in March 1964 after Mr. Meloni had disposed of a Chevrolet he owned at the time his license was suspended. At the time she applied for the insurance Mrs. Meloni told Allstate's representative that she would be the only driver, and that her husband did not have a driver's license and would not be driving.
Although at one time the policy in question was lapsed for nonpayment of premium, it was reinstated without change of terms on June 13, 1964 when Mrs. Meloni substituted a Plymouth automobile for the Rambler. She testified that at *158 the same time she told Froio that her husband's license had been revoked, and was thereupon informed by him that "as long as there were no deaths involved [in the loss of his license?] he would be insured." When cross-examined as a witness for plaintiff Froio denied there had been any discussion on that day concerning Mr. Meloni's use of the car.
On February 25, 1965 Mr. Meloni was involved in an accident while driving the Plymouth. Separate actions were instituted against the Melonis by Joseph G. Munger III (Munger), the driver of the other vehicle involved, for his injuries, and by Ruth Maria Rubino, administratrix ad prosequendum of Nicola Rubino (Rubino), a passenger in the Meloni car, for his death. During the course of its investigation of the accident Allstate learned for the first time of the previous suspensions of Vincent's driver's license. It thereupon filed the present declaratory judgment proceeding seeking an adjudication that the policy was void ab initio and by reason thereof it was not obligated to defend any suit brought against Vincent or Marion or to pay any judgment based thereon. Munger and Rubino were joined as defendants, but only Rubino was represented at the trial. The trial judge, sitting without a jury, resolved the issue of credibility in favor of plaintiff and determined that Mrs. Meloni had misrepresented the status of her husband's driver's license in answer to the cited question in the application; that the misrepresentation was material, and that when she made it she was aware of the fact her answers to the questions in the application were required to be forthright. A finding of reliance by the insurer is clearly to be implied from the court's overall findings. Actually, this was conceded by counsel for defendants at the oral argument. A concomitant judgment was entered which held the policy void ab initio and absolved plaintiff from any obligation thereunder. Only the Melonis appeal.
In general, a representation by the insured, whether contained in the policy itself or in the application for insurance, will support the forfeiture of the insured's rights *159 under the policy if it is untruthful, material to the particular risk assumed by the insurer, and actually and reasonably relied upon by the insurer in the issuance of the policy. Merchants Indemnity Corp. of New York v. Eggleston, 68 N.J. Super. 235, 244 (App. Div. 1961), affirmed 37 N.J. 114 (1962); Citizens Casualty Company of New York v. Zambrano Trucking Co., Inc., 140 N.J. Eq. 378 (Ch. 1947), affirmed 141 N.J. Eq. 310 (E. & A. 1948).
Here the untruthfulness of Mrs. Meloni's representation is conceded, but it is contended that she was justified in assuming that the question referred to her driver's license only. The trial judge was not impressed with this contention  nor are we. The wording of the question was clear. It referred to the applicant or any member of his household. Almost immediately below it and just above Mrs. Meloni's signature she declared:
"I declare that the statements made by me in this application, and any supplemental questionnaire hereto, are true. Fully understanding that the company may investigate the truthfulness of said statements through motor vehicle or police department records and the use of inspection services, I hereby request the Company to issue the insurance applied for, including renewals thereof, in reliance thereon."
The policy itself was prefaced by a statement which referred to the cited declaration in the following terms:
"In reliance upon the Declarations on the Supplement Page and subject to all of the terms of this policy * * * Allstate makes the following agreements with the named insured:"
The policy also contained a provision as follows:

"11. Effect of Policy Acceptance
By acceptance of this policy the named insured agrees that the Declarations on the Supplement Page are his agreements and representations, and that this policy embodies all agreements, relating to this insurance, existing between himself and Allstate or any of its agents."
*160 In the absence of proof of fraud or unconscionable conduct on the part of Allstate or its agents, defendants were chargeable with knowledge of the terms and contents of the policy, Merchants Indemnity Corp. of New York v. Eggleston, supra, 37 N.J., at p. 121, and of the application which became a part of it.
In order to justify cancellation or rescission of a policy for a misrepresentation material to the risk, it must appear that in issuing the policy the carrier relied upon the misrepresentation and that the circumstances were such that its reliance thereon was reasonable. Here the burden of proving reasonable reliance was on the company and it produced its sales manager who testified to the effect that the policy had been issued in reliance upon the cited representation and would not have been written otherwise. However, defendants rely upon the fact that upon receipt of Mrs. Meloni's application Allstate ordered an investigation by Service Review, Inc., a firm which made confidential investigations for insurance companies. Actually, a binder was issued to Mrs. Meloni on April 7, 1964 while Service Review's report was dated April 22, 1964. The fact that such an investigation was ordered did not absolve her from speaking the truth nor did it lessen the right of the company to rely upon her statement, unless the investigation disclosed facts sufficient to expose the falsity of the representation made or was of such a nature as to place upon the company the duty of making further inquiry. John Hancock Mutual Life Insurance Co. of Boston, Mass. v. Cronin, 139 N.J. Eq. 392, 398 (E. & A. 1947); Gallagher v. New England Mutual Life Insurance Co. of Boston, 19 N.J. 14, pp. 21-22 (1955).
Defendants argue that Service Review's investigation should have been extended to Mr. Meloni and that a copy of his driving record, obtainable from the Division of Motor Vehicles for a nominal fee, would have revealed the truth of the matter. But nothing in the contents of the application or in the subsequent report by Service Review pointed *161 to Mr. Meloni as an actual, or even a potential driver of the insured vehicle. It is conceded that Mrs. Meloni told Froio in April that her husband did not and would not drive the car and had no interest in doing so. She assured Harwood, Service Review's investigator, that "she was the sole driver, * * * her husband had no license and was not interested in driving." Further, he made a "street" investigation which satisfied him that Meloni was not driving the car. We conclude that Allstate's omission to extend its inquiry to Meloni's driving record was not unreasonable in view of Mrs. Meloni's representations. While, as noted, she testified that she had later told Froio that her husband's license had been revoked, the trial judge did not credit her testimony and we find in the record adequate support for his refusal to do so.
We are satisfied that the evidence fully supports the implied finding of the trial judge that Allstate reasonably relied upon the representation referred to, and that its right to do so was in no wise lessened by the investigation which was undertaken in its behalf. See State Farm Mutual Auto Insurance Co. v. Wall, 92 N.J. Super. 92, pp. 96-98 (App. Div. 1966).
Defendants next seek to invoke the so-called "Steliga rule," Steliga v. Metropolitan Casualty Ins. Co. of New York, 113 N.J.L. 101 (Sup. Ct. 1934), affirmed o.b. 114 N.J.L. 156 (E. & A. 1935), urging that notwithstanding the alleged misrepresentation, the provisions of the Motor Vehicle Security-Responsibility Act, N.J.S.A. 39:6-23 et seq., rendered the policy noncancellable. They point out that Meloni's license had been suspended in January 1964, the policy was issued in April 1964 while the suspension was in effect, and it was not cancelled until after the accident which gave rise to the present suit. The policy contained a financial responsibility clause which provided:
"When this policy is certified as proof of financial responsibility for the future under the provisions of any Motor Vehicle Financial Responsibility Law, such insurance as is afforded by this Part 1 shall *162 comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but not in excess of the policy limits of liability. The insured agrees to reimburse Allstate for any payment it is required to make by such law, if it would not have had to pay except for the agreement in this paragraph."
Defendants argue that regardless of the lack of proof that the Director of the Division of Motor Vehicles had required proof of financial responsibility from Meloni, and in the face of the lack of certification to that effect by Allstate in accordance with N.J.S.A. 39:6-40, upon the happening of the accident in which Munger and Rubino were injured, liability attached from which Allstate could not subsequently disengage itself. See State Farm Mutual Auto Insurance Co. v. Wall, supra, at pp. 98-101.
Defendants misconceive the import of the "Steliga rule" as applied to our present Motor Vehicle Security-Responsibility Act in State Farm Mutual Auto Insurance Co. v. Wall. In the latter case we held that although the policy was noncancellable as to the persons injured in the accident which gave rise to the suit, it was void as to Wall, the insured, by reason of his misrepresentations. Here we are concerned only with Allstate's liability to the insured, the Melonis. They alone have appealed. While Munger and Rubino would have been entitled to stand in the shoes of the Melonis as to any rights of the latter against Allstate under the policy, it does not follow that defendants are entitled to stand in the shoes of Munger and Rubino as to such rights as they may have to recover under the policy. While we specifically refrain from deciding that point, in the event that plaintiff were to be found liable to Munger and Rubino by reason of the obligation imposed by the Motor Vehicle Security-Responsibility Act, the terms of the policy required that defendants reimburse Allstate for such sums as it would be required to pay out in satisfaction of their liability.
We have considered the remaining points raised and find them to be without merit.
Affirmed.