172 N.J. Super. 249 (1979)
411 A.2d 1137
FRANK FELLIPPELLO, A MINOR, BY HIS GUARDIAN, NANCY FELLIPPELLO, AND NANCY FELLIPPELLO, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS CROSS-APPELLANTS,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND KEMPER INSURANCE COMPANY, DEFENDANT-APPELLANT CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1979.
Decided December 31, 1979.
*251 Before Judges BISCHOFF, BOTTER and DWYER.
Raymond J. Lamb, of counsel, argued the cause for appellant and cross-respondent Kemper Insurance Co. (Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys; Antonio D. Favetta on the brief).
*252 Lawrence Levitt argued the cause for respondents and cross-appellants Fellippello (Bloom & Levitt, attorneys).
John J. O'Donnell argued the cause for respondent Allstate Insurance Company (O'Donnell, McCord & Leslie, attorneys).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
This suit for personal injury protection (PIP) benefits arises from a one-car accident which occurred in Stamford, Connecticut, on October 9, 1975. Plaintiff Frank Fellippello was a passenger in the car and incurred extensive personal injuries as a result of the accident. Medical expenses, including doctors, nurses and hospital bills, total over $50,000 and continue to accumulate. Plaintiffs Frank Fellippello and Nancy Fellippello, individually and as guardian for her son Frank, a minor, instituted this action and sought (in addition to other relief) a declaratory judgment against Allstate Insurance Company (Allstate), an automobile liability insurance carrier that had issued a policy of liability insurance to Nancy Fellippello, mother of Frank Fellippello, and against Kemper Insurance Company (Kemper), the automobile liability insurance carrier covering the vehicle in which Frank was injured, declaring plaintiff to be beneficiary and entitled to PIP benefits pursuant to N.J.S.A. 39:6A-4 under the provisions of both policies.
At the conclusion of trial the judge entered a judgment declaring: (1) the policy issued by Allstate to Nancy Fellippello void ab initio, and (2) that Kemper was liable to Nancy as guardian of Frank for all medical expenses incurred and to be incurred by Frank under the policy it issued covering the car involved in the accident.
Kemper appeals from the whole of the judgment and plaintiffs appeal from that portion of the judgment declaring the policy of Allstate void ab initio.
*253 The factual background is lengthy and complex but must be stated. Robert C. Frank, 17 years of age in the summer of 1975, purchased a car and had title placed in the name of Robert H. Frank, his father. The car was added as an insured vehicle to the automobile policy issued by Kemper to Robert H. Frank. Robert attended high school in Chatham, New Jersey. Frank Fellippello had attended Chatham High School, where the two boys became friends and they remained friends after Frank Fellippello moved to Brooklyn, New York. On Friday, October 17, 1975, Robert drove his car to a college in Keene, New Hampshire, for the weekend. Frank and John, another friend, accompanied him. On Sunday, October 19, 1975, while driving his car home on the Connecticut Thruway, Robert struck a bridge abutment. John was killed, Frank was severely injured and Robert fractured his leg. Claims for PIP benefits were then asserted under the two insurance policies.
The Allstate policy was issued under the following circumstances. Nancy Fellippello and her late husband Frank resided with their three children at 84 Kings Road, Chatham, New Jersey, through September 27, 1971, when her husband died. At this time she became the sole owner of the house and began to receive Social Security benefits. She later remarried. Before doing so, and on the advice of counsel, she transferred title to the Chatham property to her two oldest sons to prevent her new husband from acquiring an interest in the property. When this marriage failed, Nancy Fellippello moved to Brooklyn to be close to her family and to conceal her new address from her husband. Nancy leased the house in Chatham in January 1974 to obtain some income, and it was still leased in October 1975, when the accident occurred. Nancy signed a two-year lease for an apartment in Brooklyn running from February 1974 to February 1976, rented space in a garage and enrolled Frank in a Brooklyn high school. She returned to New Jersey in February 1976 when she moved in with her oldest son and, in May 1976, returned to live in her home in Chatham.
*254 Concurrent with those events Nancy purchased certain insurance policies which are the subject of this litigation. After moving to Brooklyn Nancy applied to Allstate for insurance coverage on her 1972 Plymouth Scamp. This car was at all times registered in New Jersey. She made her application for insurance at an Allstate office in Livingston, New Jersey. When asked her address, Nancy answered, "84 Kings Road in Chatham," even though she was then living in Brooklyn. It is not clear whether she was asked or volunteered information as to where the car was garaged. At any rate, Allstate's file does not contain this information.
In June 1975 Nancy went to the same office in the Livingston Mall and purchased homeowner's insurance from Allstate, though from a different agent. The insurance was to cover the Chatham property and at this time she informed the agent she did not live in the house. On September 19, 1975 Nancy paid Allstate a premium for renewal of the automobile policy so as to provide coverage from October 4, 1975 to October 4, 1976.
After the occurrence of the accident Nancy submitted medical bills to Allstate and was initially reimbursed for approximately $1,900. Allstate then refused to pay any additional bills and plaintiffs instituted this declaratory action seeking a judgment:
(1) directing Allstate to pay benefits under the PIP coverage of Allstate's policy;
(2) for the same relief as to Kemper;
(3) awarding damages against Kemper for its refusal to assure the Kessler Institute for Rehabilitation that it would pay charges incurred for treating Frank, as a result of which Kessler refused Frank admission to the institute;
(4) against Kemper because that company improperly charged advance payments it had made to liability coverage rather than PIP coverage, and
(5) other relief not involved in this appeal.
*255 We shall discuss the defenses, the rulings of the trial judge and the issues raised on appeal by each insurance company separately.

I

The Allstate Policy
In ruling that the policy issued by Allstate was void ab initio, the trial judge held:
(1) The representations made by Nancy as to address and the garaging of the vehicle were material to the risk, were false and were relied upon by Allstate in issuing the New Jersey policy;
(2) Even though the misrepresentations were made to obtain coverage required by statute, Allstate was entitled to rescission;
(3) Allstate did not waive its right to rescind "through lack of diligence in acquiring information, or unreasonable delay after acquiring knowledge of misrepresentation;"
(4) Allstate did not waive its right to rescind by not acting promptly to cancel the automobile policy after learning the true facts concerning residence through the subsequent application for the homeowner's policy submitted by Nancy, and
(5) "To the extent the cases under our financial responsibility laws may have created a common-law right in the public to protection against rescission of automobile insurance policies after the occurrence of an accident, such a right would not extend to prevent rescission as to the named insured and members of her family residing in her household with respect to first-party PIP benefits."
On this appeal Kemper contends that the trial judge erred in each of the foregoing rulings and in not ruling that Allstate waived any right to rescission by expressly electing to recompute the premium on the policy in the event a false statement was made in the application for automobile liability insurance. Plaintiffs join in this argument.
*256 We are informed by Allstate's counsel that had the true facts concerning residence been disclosed to the Allstate agent in New Jersey, he could not have written the policy in New Jersey, and that an application for insurance by a New York resident covering a vehicle garaged in New York would have to made in New York to a New York Allstate agent. Furthermore, the premium for a Brooklyn resident would have been substantially higher and there would have been a limit on PIP benefits under a standard New York insurance policy, which limit has already been exceeded by the expenses incurred by plaintiffs. There was testimony that a nonresident could register vehicles in New Jersey.
The application for insurance executed by Nancy on October 3, 1974 contained the following statement directly above the applicant's signature:
I hereby declare that the statements made by me on this page of the application are true, as well as those on the reverse side hereof, and request the Company, in reliance thereon, to issue the insurance applied for; and I declare that the Company may recompute the premium shown if the statements made herein are not substantially true.
I have read this application before signing....
Consistent with this provision in the application, Allstate, in its third separate defense to plaintiffs' complaint, asserted:
Inasmuch as the plaintiff was a resident of New York, the policy of insurance referred to in the complaint should be reformed and interpreted in accordance with the law of the State of New York.
Kemper argues that the only fair and reasonable meaning to be accorded the language in the application, "may recompute the premium shown," is that Allstate elected to forego rescission and enforce the contract by seeking to recover the premium it would have charged had the misrepresentation not been made. Kemper concedes that the term "may recompute" may be open to more than one interpretation.
*257 In passing upon the significance and meaning of the language quoted from the application, we note that Allstate was the author of the printed application form and the application does not mention any other remedy for a misrepresentation and does not reserve to Allstate any other remedy.
It is well established that where the language in an insurance policy is ambiguous, the ambiguity is to be resolved against the insurer, Bryan Constr. Co. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972); Bauman v. Royal Indem. Co., 36 N.J. 12, 21 (1961); Hunt v. Hospital Service Plan of New Jersey, 33 N.J. 98, 102 103 (1961), and insurance policy language is to be interpreted liberally in favor of the insured. Bowler v. Fidelity & Cas. Co. of New York, 53 N.J. 313, 321 (1969); Mazzilli v. Accident & Cas. Co. of Winterthur, 35 N.J. 1, 7 8 (1961). These rules are especially applicable where, as in this case, the insurer seeks to void a policy to deny benefits payable to an innocent third party. Williams v. American Home Assur. Co. et al., 121 N.J. Super. 351, 363 (App.Div. 1972), certif. den. 62 N.J. 260 (1973). Frank, the injured party, did not sign the application and the record does not disclose that he was present when the application was signed.
If the controlling language will support two meanings, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining coverage will be applied for "Courts are bound to protect the insured to the full extent that any fair interpretation will allow." Mazzilli v. Accident & Cas. Co. of Winterthur, supra, 35 N.J. at 7 8; Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513 514 (1965); Fidelity & Cas. Co. of New York v. Carll & Ramagosa, Inc., 243 F. Supp. 481, 485 (D.N.J. 1965), app. dism. 365 F.2d 303 (3 Cir.1966).
These basic principles of construction are as relevant and applicable when construing pertinent provisions of an application as when construing policy provisions. The only fair and reasonable interpretation of the language contained in the application *258 is that to remedy a misrepresentation affecting the risk insured, Allstate may recompute the premium charged, and by reserving that right alone, Allstate waived any right to rescission it may have had.
The policy will be enforced as written. Even if the statement included in the application were not to be considered an election of remedies by Allstate, if at all possible we would choose a result which would preserve insurance for an injured party, particularly where, as here, the attempted rescission did not occur until after loss, and the policy is required by law. Atlantic Cas. Ins. Co. v. Bingham, 10 N.J. 460, 465 (1952); N.J.S.A. 39:6-48(a); Steliga v. Metropolitan Cas. Ins. Co., 113 N.J.L. 101 (Sup.Ct. 1934), aff'd o.b. 114 N.J.L. 156 (E. & A. 1935); United States Cas. Co. v. Timmerman, 118 N.J. Eq. 563 (Ch. 1935). Cf. Allstate Ins. Co. v. Meloni, 98 N.J. Super. 154 (App.Div. 1967).
The judgment of the trial court, insofar as it voided Allstate's policy ab initio, is reversed and Allstate may recompute and charge Nancy Fellippello any additional premium due from the owner of a car registered in New Jersey who lives in New York and garages the car in New York. Since the vehicle insured was at all times registered in New Jersey, the New Jersey form of PIP coverage is mandated. N.J.S.A. 39:6A 3; N.J.S.A. 39:6A-4. Allstate's position, as to the form of policy which would be issued to a nonresident under the circumstances existing here, was never made clear.
Having reached this conclusion, we find it unnecessary to consider the other issues raised on appeal relating to the action of the trial judge voiding the policy of Allstate ab initio[1].

*259 II

The Kemper Policy
As part of its answer and separate defenses, Kemper asserts that the basic PIP endorsement which was part of the policy and issued pursuant to N.J.S.A. 39:6A 4 provides:
Basic Personal Injury Protection Coverage
The Company will pay basic personal injury protection benefits consisting of
(a) medical expense benefits,
(b) income continuation benefits,
(c) essential services benefits,
(d) survivor benefits, and
(e) funeral expense benefits
with respect to bodily injury sustained by an eligible injured person, caused by accident and arising out of the ownership, maintenance or use, including loading or unloading, of a private passenger automobile as an automobile.
Exclusions
The insurance under this endorsement does not apply:
........
(c) to bodily injury to any person, other than the named insured or a resident of New Jersey, if the accident occurs outside of New Jersey.
........
Kemper argues that the PIP endorsement does not provide any coverage for plaintiffs because plaintiff Frank Fellippello was not a relative of Robert and, for more than one year prior to the accident, was a resident of Brooklyn, New York. Hence, Kemper claims, coverage is excluded since the accident occurred in Connecticut.
As a separate defense, Kemper also contended that the insurance benefits provided under Allstate's policy are primary and the benefits under Kemper's policy are only secondary in character.
*260 The trial judge ruled that "N.J.S.A. 39:6A 4 requires all PIP endorsements to provide personal injury protection coverage to any passenger occupying the automobile of the named insured, regardless of the passenger's residence and regardless of where the accident occurs." He further held that to the extent the policy conflicts with the statute, it would be considered amended to conform with the statute and, although the Commissioner apparently approved the New Jersey Basic Personal Injury Protection Endorsement in a form identical to that here under review, the Commissioner had no power to approve an exclusion violating the statutory requirements.
On appeal Kemper argues that nothing in the No Fault statute precludes an insurer from denying the PIP coverage in its policy to a nonresident passenger in an insured vehicle involved in an out-of-state accident and "since the form of all policies must be approved by the Commissioner of Insurance the territorial exclusion must have received the Commissioner's approval." Kemper further argues that the Commissioner has been vested with broad powers to supervise the form and content of insurance policies, N.J.S.A. 17:1 8.1; N.J.S.A. 17:1C 6; N.J.S.A. 39:6A 20, and since this territorial exclusion does not contravene any provision of the statute, it should be upheld.
In addition, Kemper claims that New Jersey has no public policy or interest in protecting nonresidents involved in out-of-state accidents, and policy provisions providing for such territorial exclusions should be enforced as written.
The statute mandating the inclusion of PIP coverage in all automobile liability insurance policies covering automobiles registered or principally garaged in New Jersey was effective January 1, 1973, L. 1972, c. 70, § 19, and provides in pertinent part:
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, *261 as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured.... [N.J.S.A. 39:6A-4]
An insurer is permitted to exclude a person from benefits under the required coverage, but such exclusions are limited to specified instances:
Insurers may exclude a person from benefits under section 4 a., b., c., d., and e. and section 10 where such person's conduct contributed to his personal injuries or death occurred in any of the following ways:
a. while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or
b. while acting with specific intent of causing injury or damage to himself or others.
[N.J.S.A. 39:6A-7]
It is now clear that the Commissioner has no power or authority to approve forms of policies or endorsements which violate the statutory intent, Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 286 (1974); Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 482 (App.Div. 1976), and where policy provisions conflict with the coverage required by statute, they are inapplicable and deemed amended to conform to the statutory standards. Hoglin v. Nationwide Mut. Ins. Co., supra; Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373 (1966).
In resolving this issue, we adhere to the principle of statutory construction followed in the past with respect to legislation involving automobile insurance, "i.e., liberality in effecting the broadest protection of auto accident victims consistent with the language of the pertinent statute," Motor Club of America Ins. Co. v. Phillips, supra, 66 N.J. at 293, and strictly construe exclusionary clauses against the insurer. Weedo v. *262 Stone-E-Brick, Inc., 155 N.J. Super. 474, 485 486 (App.Div. 1977), rev'd on other gds. 81 N.J. 233 (1979); Boswell v. Travelers Indem. Co., 38 N.J. Super. 599 (App.Div. 1956).
Under these principles, both our Supreme Court and this court have consistently held that any attempt by an insurer to limit or restrict its liability on an uninsured motorist endorsement is contrary to both the intent and meaning of that statute, N.J.S.A. 17:28 1.1; Motor Club of America Ins. Co. v. Phillips, supra; Beek v. Ohio Cas. Ins. Co., 135 N.J. Super. 1 (App.Div. 1975), aff'd o.b. 73 N.J. 185 (1977), and we have consistently invalidated insurance policy provisions which attempt to reduce or limit uninsured motorist recoveries by monies received under bodily injury insurance policy provisions. Fernandez v. Selected Risks Ins. Co., 163 N.J. Super. 270 (App.Div. 1978), certif. granted 79 N.J. 488 (1979), cross-petition for certif. den. 79 N.J. 489 (1979); Silas v. Allstate, 129 N.J. Super. 99 (App.Div. 1974). See, also, Selected Risks Ins. Co. v. Schulz, 140 N.J. Super. 555 (Ch. Div. 1976). This same approach and reasoning is fully applicable to policy provisions providing statutorily mandated PIP coverage. N.J.S.A. 39:6A 4.
We conclude that since the Legislature has provided for certain exceptions to the required PIP coverage which do not include the territorial exclusion for nonresidents contained in the Kemper policy, N.J.S.A. 39:6A 7, we should not by implication amend the statute by approving and giving effect to the Kemper territorial exclusion. We hold that the nonresident territorial exclusion contained in the Kemper policy is invalid. The PIP endorsement is amended to eliminate the exclusion and bring the policy into conformity with the statute.
The policies issued by Kemper and Allstate contain identical provisions stating the circumstances under which the presence of other similar insurance coverage relegates the policy in question to primary or secondary insurance status. Although this issue *263 was raised in the pleadings, the determination of the trial judge made it unnecessary for him to resolve it. The issue was not raised on this appeal by either party. Our determination of this appeal reserves to all parties the right to apply to the trial court for a resolution of this issue should they desire to do so. We retain jurisdiction to review the trial court's determination of this single issue should any party seek appellate review.

SUMMARY
1. The judgment voiding the Allstate policy ab initio is reversed and said policy is deemed effective for all purposes.
2. Allstate's right to recompute the premium due based upon the true facts is reserved to Allstate.
3. The judgment holding the Kemper policy applicable and the territorial exclusion void is affirmed.
4. The issue of primary and secondary coverage is reserved to Allstate and Kemper.
NOTES
[1] It is extremely doubtful that Allstate is entitled to rescind for the misrepresentation concerning residence and the garaging of the vehicle since Allstate failed to prove these misrepresentations were material and that they would not have written the policy had they known the true facts. Indeed, it was conceded at oral argument by counsel for Allstate that had the true facts been presented to a New York office of Allstate, the policy would have been written.