738 A.2d 987 (1999)
325 N.J. Super. 268
ALLSTATE INSURANCE COMPANY, Plaintiff,
v.
Idabells LOPEZ, et al., Defendants.
Superior Court of New Jersey, Law Division, Morris County.
Decided June 11, 1999.
*988 James Sullivan, Morristown, for plaintiff (Sullivan & Graber, attorneys).
Steven Stadtmauer, West Orange, for defendant Hackensack University Medical Center (Celentano, Stadtmauer & Walentowicz, attorneys, Clifton).
V. Maria Christiano, for defendants Henry Opalka (deceased) and Stella Opalka (Norton, Arbert, Sheehy & Higgins, attorneys).[1]
VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).
Allstate Insurance Company ("Allstate") brings this declaratory judgment action against a myriad of 434 "insureds" and medical providers for alleged insurance fraud pursuant to the New Jersey Insurance Fraud Prevention Act ("the Fraud Act"), N.J.S.A. 17:33A-1 to -14. Previously, this court has stayed hundreds of personal injury lawsuits and arbitrations for personal injury protection ("PIP") benefits.[2]
Allstate now moves for partial summary judgment to have this court (1) declare that the insurance policy issued to "Siber Rodriguez" be declared void ab initio and that no third party has derived any rights from such policy because it was fraudulently obtained by an imposter, and further (2) dismiss all claims brought by any person using the name "Eric Dominguez" or his assignee and all claims brought by individuals owning, driving or occupying any motor vehicle owned, driven or occupied by a person using the name "Eric Dominguez" or his or her assignee.[3]
The first issue is whether a third party can acquire any rights against an insurer, either as a purported "insured" under the policy or as an assignee, after an imposter ["Siber Rodriguez"] obtained an insurance policy.
The second issue is whether an insurer has any liability for claims arising out of an impostor's ["Eric Dominguez's"] actions in staging accidents, including claims either by injured persons who were parties to a fraudulent scheme to defraud insurance companies or by their assignees.

I.

ALLSTATE'S ALLEGATIONS
This case is only one of numerous cases involving one of the largest automobileaccident fraud rings documented in United States history.[4] This fraud ring operates primarily in the cities of Passaic and Paterson, New Jersey ("Passaic-Paterson fraud ring"). The participants in this ring instituted hundreds of personal injury law *989 suits and arbitration proceedings seeking PIP and other benefits. These actions were brought either individually or through medical provider assignees.
For the most part, the participants design each accident to appear as if it were caused solely by the negligence of a single insured driver. Hence, ring members consistently employ predictable factual scenarios that serve as a blueprint in order to ensure that the at-fault participant is easily recognizable and the participants avoid actual injury. These scenarios include: low-speed rear-end hits, intersection accidents caused by a driver's acknowledged failure to obey a stop sign, impacts caused by a driver's failure to yield when exiting from a parking lot, driveway or parking space, and, side-swipes of a stopped vehicle caused by another driver's wide turn. These fact patterns generally foreclose liability questions and are designed to encourage insurance companies to settle claims quickly without litigation.
"Siber Rodriguez" and Orlando Figueroa were allegedly insured by Allstate. Maximo Medina, Justo Moreno, Jose Rojas, Luis Igo, Sonia Pabon, Idabells Lopez and Andy Catanichi were, in fact, insured by Allstate and had almost identical insurance policies. Their policies have $100,000/$300,000 uninsured motorist coverage. These policies cover insured vehicles at least fifteen years old. None of these policies included comprehensive theft/collision coverage. That coverage option would subject the insured's vehicles to a photo-inspection which would document any pre-existing damage. The policies also provide the minimum permitted by law for PIP medical deductible expenses. These policies are similar to the policies purchased by other known members of the Passaic-Paterson fraud ring, such as "Siber Rodriguez" and Orlando Figueroa (a/k/a Jose Nazario).

II.

UNDISPUTED MATERIAL FACTS REGARDING "SIBER RODRIGUEZ"[5]
Allstate policy number XXXXXXXXX was issued to "Siber Rodriguez" on December 28, 1995. During the application process, Allstate agents collected copies of a driver's license issued to "Siber Rodriguez," a certificate of title and motor vehicle registration for a 1980 black Chevrolet station wagon registered to "Siber Rodriguez," and a rent receipt for "Siber Rodriguez" indicating his address as 446 Monroe Avenue, Passaic.
The application was signed by "Siber Rodriguez," who listed his social security number as XXX-XX-XXXX and his date of birth as September 21, 1959. However, the name "Siber Rodriguez" is an appropriated identity. The real Siber Rodriguez confirmed that he had never obtained an Allstate insurance policy and that his social security number was XXX-XX-XXXX and his date of birth was September 21, 1959.
Jose Nazario (also known as Orlando Figueroa) is believed to be a major ringleader in the Passaic-Paterson fraud ring and is being investigated for his involvement in at least twenty-six alleged accidents in a fourteen-month period. Orlando Figueroa also appears to be a false persona created to defraud insurance companies.
It was later discovered that the person or persons purporting to be "Siber Rodriguez": (1) was involved in accidents with other ring players; and/or (2) lent a car to another ring member who subsequently caused an automobile accident; and/or (3) borrowed a car from another ring player and operated that vehicle during an automobile accident; and/or (4) was connected through relationships with passengers in *990 separate accidents. Every person who owned, drove, or occupied a vehicle in which "Siber Rodriguez" was the purported owner, driver, or a passenger, was a member of the Passaic-Paterson fraud ring. No defendant has disputed these allegations by competent evidence. See R. 4:46-5(a) and R. 1:6-6.
The name "Siber Rodriguez" was used by various ring members to submit claims for injuries allegedly arising out of staged or intentionally caused accidents on eleven separate dates between November 14, 1995 and October 24, 1996. This, in turn, generated fourteen claims for bodily injury and PIP benefits submitted to Allstate.
Many of the claimants provided the same address as "Siber Rodriguez" when filing their respective claims. This address is known as a center for ring-related activity. Between December 16, 1992 and April 14, 1997, various ring members filed at least 136 claims with different insurers; all claimants provided 446 Monroe Avenue, Passaic as his or her home address.

III.
"In order to justify cancellation or rescission of [an insurance] policy for a misrepresentation material to the risk, it must appear that in issuing the policy the carrier relied upon the misrepresentation and that the circumstances were such that its reliance thereon was reasonable." Allstate Ins. Co. v. Meloni, 98 N.J.Super. 154, 160, 236 A.2d 402 (App.Div.1967). Allstate's investigation of the applicant, "Siber Rodriguez," and its collection of relevant documents, illustrates the reasonable efforts it took to prevent the perpetration of fraud when it issued policy number XXXXXXXXX. The same also evinces the reasonableness of Allstate's relying upon the "Siber Rodriguez's" misrepresentations.
In addition to meeting legal requirements, Allstate's actions were conducted for the benefit of the insured, the public and itself. Without "proof of fraud or unconscionable conduct on the part of [an insurer] or its agents, [applicants are] chargeable with knowledge of the terms and contents of the policy, Merchants Indemnity Corp. of New York v. Eggleston, 68 N.J.Super. 235, 172 A.2d 206 (App.Div. 1961), aff'd, 37 N.J. 114, 179 A.2d 505 (1962), and of the application which became a part of it." Meloni, supra, 98 N.J.Super. at 160, 236 A.2d 402. Clearly, Allstate did not engage in fraud or unconscionable conduct.
Declaring an insurance policy void ab initio does not necessarily preclude innocent passengers from recovering benefits from the insurance company. Dillard v. Hertz Claim Management, 277 N.J.Super. 448, 453, 650 A.2d 1 (App.Div. 1994), aff'd o.b., 144 N.J. 326, 676 A.2d 1065 (1996); see also Fisher v. New Jersey Auto. Full Ins., 224 N.J.Super. 552, 540 A.2d 1344 (App.Div.1988) (holding that a revocation of a validly issued policy when the initial premium check was dishonored does not affect the right of an innocent third party to recover under liability and uninsured motorist provisions of the policy). As articulated by the Appellate Division in Fisher, an automobile insurer cannot avoid liability under policy to an insured's passenger who was injured in an automobile accident by declaring the policy void ab initio after the accident, even though the insured's misrepresentations rendered policy void ad initio as to the insured. Id. at 557, 540 A.2d 1344. The insurer's liability to its insured who may be guilty of some act or conduct which renders policy void ab initio is distinct from the insurer's liability to an injured third person. To permit an insurer to declare a compulsory automobile insurance policy void ab initio after a third party is injured simply because insured was not qualified under the No Fault Law, N.J.S.A. 39:6A-1 to -35, would undermine the legislative purpose of the No Fault Law. Id. at 557-58, 540 A.2d 1344.
Here, the policy was not issued to a real insured [Siber Rodriguez]. Furthermore, the subject defendants are not innocent *991 claimants as a result of their misrepresentations and participation in a broader conspiracy to commit fraud against Allstate. Therefore, all defendants' claims based upon policy number XXXXXXXXX are precluded.

IV.

UNDISPUTED MATERIAL FACTS REGARDING "ERIC DOMINGUEZ"[6]
The name "Eric Dominguez" is an appropriated identity. The real Eric Dominguez lost his license on July 26, 1995 when someone broke into his car in Paterson and stole his credit cards and driver's license. This name is one of many names and/or identities illegally obtained and used by members of the Passaic-Paterson fraud ring to advance their common purpose of defrauding automobile insurers. The person or persons purporting to be "Eric Dominguez": (1) was involved in an accident with another ring player; and/or (2) lent a car to another ring member who subsequently caused an automobile accident; and/or (3) borrowed a car from another ring player and operated that vehicle during an automobile accident; and/or (4) is connected through relationships with passengers in separate accidents.
The name "Eric Dominguez" was used by various ring members to submit claims for injuries allegedly arising out of staged or intentionally caused accidents on five separate dates between October 23, 1995 and May 27, 1996. Seven claims were made for bodily injury damages and PIP benefits from these accidents. The real Eric Dominguez does not know any of the claimants who were involved in any accident involving "Eric Dominguez." They have not asserted that they were innocent victims or were not part of the Passaic-Paterson fraud ring. The enormous number of "accidents" and the numerous claims from claimants living at the same addresses is not merely coincidental.
In this regard, it comes as no surprise to this court that none of the defendants filed an opposing certification or responded to this motion to deny insurance coverage. These facts, combined with the various participants' significant connections to the Passaic-Paterson fraud ring, clearly support the dismissal of all claims brought by individuals for injuries allegedly resulting from accidents where purported "Eric Dominguez" lent or operated a motor vehicle or was a passenger or otherwise involved in submitting fraudulent claims.
Insurers may exclude a person from benefits where such person's conduct contributed to his or her personal injuries "while acting with specific intent of causing injury or damage to himself or others." N.J.S.A. 39:6A-7(a)(2). In enacting N.J.S.A. 39:6A-4, mandating PIP coverage in automobile liability policies, the Legislature obviously intended not to exclude results of intentionally inflicted injury except where conduct of the injured person was implicated. Pennsylvania Nat. Mut. Cas. Ins. Co. v. Miller's Estate, 185 N.J.Super. 183, 187, 447 A.2d 1344 (App.Div.1982). Clearly, the conduct of all injured parties is implicated herein.
Because it is undisputed that all these defendants were involved in the fraud ring, staged accidents and filed false claims, they are not entitled to recover any benefits. Likewise, any assignee would have no rights greater than the assignor. Abeles v. Adams Engineering Co. Inc., 64 N.J.Super. 167, 187, 165 A.2d 555 (1960), modified, 35 N.J. 411, 173 A.2d 246 (1961); Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc., 890 F.Supp. 1247 (D.N.J.1995). Hence, there is no genuine issue as to any material fact. "There simply is no issue to be decided by the jury based on the evidence." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 527, 666 A.2d 146 (1995).

*992 V.
The only objecting defendant is Hackensack University Medical Center ("hospital"). The hospital apparently rendered medical treatment to some of the injured defendants as evidenced by its answer to the complaint. The hospital was merely named as a defendant "medical provider," and Allstate is not seeking any relief against it. Those named as defendants who may have been treated by the hospital are "Siber Rodriguez," Luis O'Neill, Orlando Figueroa, Maria Vinales, Luis Vigo, Sonia Pabon, Idabells Lopez, Andy Catanichi and Ivette Ortiz. Although the hospital has asserted 23 affirmative defenses, it has not alleged an assignment of any injured parties' rights nor filed a mandatory counterclaim. See R. 4:7-1. Therefore, it has no standing to oppose Allstate's claims.
Even if the hospital were an assignee, it may not claim a position stronger than the one its assignor could assert. The defenses available against an assignor are available against his assignee. Brooklawn v. Brooklawn, Housing Corp., 129 N.J.L. 77, 79, 28 A.2d 199 (Err. & App.1942); Restatement (Second) of Contracts, sec. 336(1)(1981); Ringwood Assoc. Ltd. v. Jack's of Route 23, Inc., 153 N.J.Super. 294, 311, 379 A.2d 508 (Law Div.1977), aff'd, 166 N.J.Super. 36, 398 A.2d 1315 (App.Div.1979); Tirgan v. Mega Life & Health Ins., 304 N.J.Super. 385, 391, 700 A.2d 1239 (Law Div.1997) (physician's rights as assignee of patient's health insurance policy could rise no higher than patient's rights under policy.)

VI.
Allstate's motion for summary judgment on all counts relating to "Siber Rodriguez" and policy number XXXXXXXXX is granted. Allstate is not obligated to provide liability, PIP, uninsured/underinsured or any other coverage under policy number XXXXXXXXX.
Summary judgment is granted in favor of Allstate declaring invalid any and all claims brought by "Eric Dominguez" or by an assignee of "Eric Dominguez." In addition, this court dismisses all claims allegedly arising out of accidents where "Eric Dominguez" owned or operated a motor vehicle or in which he was a passenger.
NOTES
[1] Given Stella Opalka's sworn testimony at an examination under oath that neither she nor her husband, who is now deceased, was injured and that Allstate is not seeking damages from them, Allstate has agreed to dismiss its complaint against them.
[2] See Allstate Ins. Co. v. Lopez, 311 N.J.Super. 660, 710 A.2d 1072 (Law Div.1998) ("Lopez I").
[3] Facts in the original opinion have been condensed for this published opinion.
[4] There are at least 70 insurance fraud cases involving approximately 7,000 defendants pending in Morris County alone.
[5] The facts and conclusions have been obtained from the certifications of Benjamin Hickey, Special Investigative Unit Analyst of Allstate, whose duty is to uncover fraud rings, and from documents submitted by Allstate. The court also takes judicial notice of its findings of fact in Lopez I. There has been no opposing proof submitted.
[6] This evidence submitted by Allstate has not been disputed.