**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1918-22

UNITED STATES FIRE
INSURANCE COMPANY,

      Plaintiff-Respondent,

v.

MACHANE OF RICHMOND,
LLC,

      Defendant.

_____

MACHANE OF RICHMOND,
LLC,

      Defendant/Third
      Party-Plaintiff,

v.

GROSS & CO., LLC,

      Third-Party Defendant.

_____

ELIYAHU KORENFELD,

      Intervenor-Appellant.

_____

Argued October 17, 2024 – Decided November 1, 2024

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1465-20.

Bharati O. Sharma argued the cause for appellant (Weitz and Luxenberg, PC, attorneys; Bharati O. Sharma, on the briefs).

Kristin V. Gallagher argued the cause for respondent (Kennedys CMK, LLP, attorneys; Kristin V. Gallagher and Katrine L. Hyde, of counsel and on the brief).

PER CURIAM

Intervenor Eliyahu Korenfeld appeals from the October 21, 2022 order granting summary judgment in favor of plaintiff United States Fire Insurance Company (U.S. Fire) rescinding a policy of insurance it issued to defendant Machane of Richmond, LLC (Machane).[1]  We affirm.

I.

_____

[1]  Machane is not participating in this appeal and did not file a brief.  After the court granted summary judgment, Machane and third-party defendant Gross & Co., LLC (Gross) settled the third-party claims and filed a stipulation of dismissal with prejudice.  On January 20, 2022, the court entered an order certifying the October 21, 2022 order as a final judgment.

2                                                             A-1918-22

In May 2019, Alexander and Sara Guttman[2] formed Machane for the sole purpose of operating a summer camp for high school boys in Virginia from August 6, to August 26, 2019. To meet its transportation needs, including transporting campers to and from the New Jersey/New York area, Machane intended to rent "larger vans, [twelve] to [fifteen] seaters." Machane did not own any vehicles and relied exclusively on rental vehicles for its operations.

On May 30, 2019, Alexander contacted Gross to obtain "general liability" insurance for the camp, as well as "extra insurance for [the] vans." Alexander was familiar with Gross because he previously worked for a similar camp that obtained its insurance through Gross. Alexander advised Devora Rosenthal, an employee of Gross and the "agent [he] was working with . . . getting the insurance," that he was planning to rent vans to transport campers to and from activities and events. According to Alexander, Rosenthal advised him that "there is this extra van policy" he should obtain.

On June 28, Rosenthal emailed Alexander and explained coverage for "[h]ired & [n]on[-o]wned auto" (HNOA) liability could be added to a general liability policy to afford coverage for "bodily injury and property damage caused

---

[2] Because Alexander and Sara share a common surname, we refer to Alexander using his first name. By doing so, we intend no disrespect.

A-1918-22

by a vehicle you hire (including rented or borrowed vehicles) or caused by non-owned vehicles (vehicles owned by others, including vehicles owned by [Machane's] employees)."

On July 9, Alexander contacted Hertz Entertainment Services (Hertz) and arranged for the rental of four "fifteen[-]seater [Ford] [t]ransit vans" from "Aug[ust] 2[] for the month at the [c]amp monthly rate." On July 10, Hertz responded with the reservation number for the vans.

On July 30, Gross, on behalf of Machane, submitted a "[s]peciality [i]nsurance coverage for [s]ports [c]amps, [c]linics[,] and [c]onferences" application to Francis L. Dean & Associates, LLC (FL Dean), the national program administrator for U.S. Fire's sports and entertainment insurance program. The application form noted "$1,000,000 [HNOA] liability coverage" was "available but subject to additional underwriting[.]" Machane requested HNOA coverage with a limit of $1,000,000.

In its role as national program administrator, FL Dean underwrote, quoted, bound, issued, and endorsed policies pursuant to underwriting guidelines established by U.S. Fire. On July 31, in response to Machane's application, Kristin Hockemeyer, then an employee of FL Dean, advised Gross that "to receive a quotation for the $1[,000,000] HNOA" coverage, Machane would need

to complete a supplemental application, which she provided to Gross as an email attachment. That same day, Rosenthal emailed the supplemental application to Machane to complete "so [they could] proceed with [Machane's] quote" for HNOA coverage. The supplemental application consisted of six questions with subparts on a single page. Under the heading "[h]ired [a]uto [l]iability," the form asked:

> 4. Do you hire or rent vehicles during your fair/festival/event? □ Yes □ No
> If yes, please describe vehicle types, estimated number, duration[,] and usage:
>
> . . . .
>
> If yes to [number] 4, are any of these vehicles [twelve] or [fifteen]-passenger vans?
> □ Yes (How many? _____)
> □ No

On August 1, Alexander completed and signed the supplemental application with the express intention of securing insurance for the fifteen-seat vans Machane rented from Hertz. The same day, Gross returned the supplemental application to FL Dean. In response to the first part of question four, Machane checked the box "[n]o." It responded "N/A" to the second part of the question, which requested a description of the vehicle types, estimated number, duration, and usage. Because Machane answered "no" to the first part

of question four, it did not answer the final part of the question that asked, "are any of these vehicles [twelve] or [fifteen]-passenger vans?"

On August 6, FL Dean provided Gross with a price quotation that included premium quotes for accident liability, general liability, and optional coverages including HNOA coverage. Under the HNOA coverage options section of the quote, it stated, "[twelve] and [fifteen plus] [p]assenger [v]ans are excluded." The same day, Gross requested that FL Dean bind coverage pursuant to the quote.

Based on the information provided to FL Dean by Gross, U.S. Fire issued certificate number USP303011 to Machane as a named insured member under a master policy of insurance issued to the Sports and Recreation Providers Association Purchasing Group for the effective period August 6, 2019, to August 28, 2019 (the policy). The policy afforded general liability coverage and HNOA liability coverage subject to a covered autos liability limit of $1,000,000. Absent the additional HNOA coverage extension, the policy excluded coverage for liability "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."

6

On August 15, while being operated by a Machane employee, one of the fifteen-passenger vans rented by Machane was involved in a single-vehicle accident in North Carolina. Multiple campers who were in the van, including Korenfeld, allege injuries caused by the accident and asserted claims against Machane.

On June 22, 2020, U.S. Fire filed its complaint in this action seeking a declaration that the policy be rescinded due to Machane's material misrepresentation made in connection with its application for HNOA coverage. On June 23, 2020, Korenfeld filed a complaint against Machane in the United States District Court for the District of New Jersey seeking damages for injuries sustained in the accident. On February 25, 2021, the court granted Korenfeld's motion to intervene in this action.

After the close of discovery, U.S. Fire moved for summary judgment. In support of its motion, U.S. Fire relied on the deposition testimony and affidavit of Michael Dean, one of the owners of FL Dean. According to Dean, effective February 1, 2019, U.S. Fire and FL Dean entered into a program administrator agreement under which FL Dean underwrites, binds, and issues policies on behalf of U.S. Fire pursuant to underwriting guidelines established by U.S. Fire. The agreement provides that FL Dean "cannot solicit, underwrite, quote, bind,

7

[or] issue . . . policies or certificates which are not in accordance with the express terms of the . . . [u]nderwriting [g]uidelines."

The U.S. Fire underwriting guidelines provide "[twelve] or [fifteen] plus passenger vans are ineligible for [the HNOA coverage] program." According to Dean, FL Dean relied on the information provided by Gross when underwriting the policy and was never advised Machane intended to use twelve or fifteen passenger rental vans during the camp. Dean continued, "[h]ad FL Dean been informed of Machane's intention to use [twelve] or [fifteen]-passenger rental vans, FL Dean would not have written [HNOA] coverage for Machane" because "FL Dean was not permitted" to do so "pursuant to the terms of [FL Dean's agreement with U.S. Fire] and the [u]nderwriting [g]uidelines."

On September 23, 2022, the court heard oral argument on U.S. Fire's motion. The court rejected defendants' contention that question four on the supplemental application was ambiguous. It found the question "is not ambiguous, it is plain on its face." The court explained, "[t]he question was clear. It was[ not] a trick question. It could[ not] be interpreted in . . . different ways. The question was[,] do you rent automobiles and [Machane] said no." The court determined supplemental briefing was required on the question of

8

whether U.S. Fire was entitled to rescission if Machane's response to question four was inaccurate but was not made with an intent to defraud U.S. Fire.

On October 21, 2022, after supplemental briefing was completed, the court again heard oral argument and granted U.S. Fire's motion in an oral opinion. The court found Machane's answer to question four "was inaccurate, and U.S. Fire had [the] right to rely upon the accuracy of the information provided. They did so to their detriment." It also found "the questions were specific. They were tailored to this situation. They asked the insured. It was responded to in the negative." As a result of Machane's material misrepresentation, the court rescinded the policy. The court rejected as inequitable defendants' request that it exercise its discretion to reform the policy to include a $500,000 limit of liability rather than rescind the policy.

On appeal, Korenfeld contends the court erred in finding question four on the supplemental application was unambiguous. He also argues the court erred by granting summary judgment because: (1) U.S. Fire failed to establish a material misrepresentation and reliance by its underwriter; (2) the policy requires a finding of intentional fraud to void the policy; (3) an exclusion in an automobile policy must appear on the declarations page to be effective; and (4)

public policy favors the assurance of financial protection for innocent victims of automobile accidents.[3]

## II.

We affirm substantially for the reasons set forth in the court's September 23, and October 21, 2022 oral opinions. We add the following comments.

This court reviews a trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Likewise, when the issue on appeal involves the trial judge's interpretation of the law, we engage in a de novo review. See Finderne Mgmt. Co. v. Barrett, 402 N.J. Super. 546, 573 (App. Div. 2008) (noting that an appellate court does

---

[3] U.S. Fire argues Korenfeld does not have standing to pursue this appeal. U.S. Fire did not cross-appeal from the February 25, 2021 order granting Korenfeld's motion to intervene and that argument is waived. State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006). "[O]ur courts routinely recognize that a successful intervenor is a party to the litigation." N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 289 (App. Div. 2018). We, therefore, decline to dismiss the appeal for lack of standing.

A-1918-22

not "owe any special deference to a trial court's legal conclusion"); see also Shaler v. Toms River Obstetrics & Gynecology Assocs., 383 N.J. Super. 650, 657 (App. Div. 2006). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Tp. of Manalapan, 140 N.J. 366, 378 (1995).

III.

We are satisfied the court correctly determined question four on the supplemental application is not ambiguous. "The basic principles of construction of [an insurance policy] are as relevant and applicable as construing pertinent provisions of an application . . . ." Fellippello v. Allstate Ins., 172 N.J. Super. 249, 257 (App. Div. 1979). Because we review the interpretation of an insurance policy de novo, we too review interpretation of an insurance application de novo. See Est. of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 554-55 (App. Div. 2020) (citing Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, 450 N.J. Super. 400, 406 (App. Div. 2017)).

A court interpreting an insurance policy "must start with the plain language of the policy." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 101 (2009). However, "insurance policies are subject to special rules of

interpretation." Botti v. CNA Ins., 361 N.J. Super. 217, 224 (App. Div. 2003) (citing Araya v. Farm Fam. Cas. Ins., 353 N.J. Super. 203, 206 (App. Div. 2002)). "[A]ny ambiguity in an insurance contract must be resolved against the insurer and in favor of coverage." Ibid. (citing Cruz-Mendez v. ISU/Ins. Servs. of S.F., 156 N.J. 556, 571 (1999)). "[I]f there is no ambiguity present, an insurance contract will be enforced as written." Ibid.

The plain language of the supplemental application asked Machane if it hired or rented vehicles during its event. As the court correctly found, the question was "plain on its face," it "was clear," and "could[ not] be interpreted in . . . different ways." There is no reasonable dispute that Alexander understood he rented vans from Hertz during the camp. When he contacted Hertz to rent the vans, he stated the rental would be from "Aug[ust] 2[] for the month at the [c]amp monthly rate." He also knew the event referenced in the supplemental application was the camp. Indeed, Machane was formed for the sole purpose of operating the camp; there was no other event.

We are unpersuaded by Korenfeld's argument that the question is ambiguous because Alexander subjectively believed the question applied only to "hired" vehicles and did not apply to him because he rented the vans before the camp started. The contention that Alexander did not understand the question

A-1918-22

referred to rented vans is not supportable. The question specifically asked whether Machane hired or rented vehicles. The question cannot reasonably be interpreted to apply only to hired vehicles. In addition, before Alexander completed the application, Gross advised him that HNOA coverage applies to "bodily injury and property damage caused by a vehicle you hire (including rented or borrowed vehicles)."

Alexander also understood that he was applying for HNOA coverage for the vans Machane previously rented from Hertz. That was the very reason Gross advised him to obtain HNOA coverage. He was applying for the HNOA coverage and completing the supplemental application specifically to obtain insurance coverage for the rented vans. The claim that Alexander subjectively believed question four did not apply to him because he rented the vans before the camp started is neither reasonable nor plausible. We conclude, based on the plain language of the supplemental application, the court correctly found question four is not ambiguous.

IV.

We also conclude the court correctly found U.S. Fire is entitled to rescission of the policy based on the doctrine of equitable fraud. To establish a claim for rescission based on material misrepresentation in an insurance

13

application, an insurer need only prove equitable fraud, not legal fraud. Ledley v. William Penn Life Ins., 138 N.J. 627, 635 (1995). A finding of equitable fraud requires proof of three elements: "'(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party.'" First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37 (2003) (quoting Liebling v. Garden State Indem., 337 N.J. Super. 447, 453 (App. Div. 2001)). The elements of a claim of equitable fraud must be established by clear and convincing evidence. Daibo v. Kirsch, 316 N.J. Super. 580, 588 (App. Div. 1998).

Unlike legal fraud, "[t]he elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom, are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud." Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 625 (1981) (citations omitted). "In other words, a party seeking rescission based on equitable fraud need not prove 'knowledge of the falsity and an intention to obtain an undue advantage . . . .'" Liebling, 337 N.J. Super. at 453 (quoting Jewish Ctr. of Sussex Cty., 86 N.J. at 625).

A misrepresentation is material if, had it been revealed, the insurer would either not have issued the policy or would have insured only at a higher

premium. <u>Palisades Safety & Ins. v. Bastien</u>, 175 N.J. 144, 148-49 (2003). A material misrepresentation is one that "'naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." <u>Mass. Mut. Ins. v. Manzo</u>, 122 N.J. 104, 115 (1991) (alteration in original) (quoting <u>Kerpchak v. John Hancock Mut. Ins.</u>, 97 N.J.L. 196, 198 (1922)).

Where an objective question is posed on an application, "[e]ven an innocent misrepresentation can constitute equitable fraud justifying rescission." <u>Ledley</u>, 138 N.J. at 635. "Objective questions call for information within the applicant's knowledge . . . ." <u>Id.</u> at 636.

"The law is well settled that equitable fraud provides a basis for a party to rescind a contract." <u>First Am. Title</u>, 177 N.J. at 136 (citing <u>Jewish Ctr.</u>, 86 N.J. at 626); <u>Ledley</u>, 138 N.J. at 637-39. "Rescission voids the contract ab initio, meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose." <u>First Am. Title</u>, 177 N.J. at 136-37 (quoting <u>Black's Law Dictionary</u> 1568 (7th ed. 1999)).

The court's finding that U.S. Fire is entitled to rescission based on equitable fraud is amply supported by clear and convincing evidence in the record. Korenfeld concedes Machane provided inaccurate information in

A-1918-22

response to question four of the supplemental application. That question was objective because it called for information within the applicant's knowledge. By responding that it did not rent vans during its event, Machane misrepresented a presently existing or past fact.

U.S. Fire also established the misrepresentation was material, Machane intended that U.S. Fire rely on it, and that U.S. Fire did so to its detriment. Dean's testimony and affidavit, as well as the U.S. Fire underwriting guidelines, establish FL Dean would not have issued the HNOA coverage to Machane if it was aware Machane rented the fifteen passenger vans during its camp. The U.S. Fire underwriting guidelines expressly provide twelve-to-fifteen plus passenger vans were "ineligible for the [HNOA coverage] program." According to Dean, this meant FL Dean was not authorized to offer or bind coverage for twelve to fifteen plus passenger vans. Consistent with Dean's testimony and affidavit, the August 6, 2019 quote FL Dean sent to Gross advised that "[twelve] and [fifteen plus] [p]assenger [v]ans are excluded."

U.S. Fire established Machane intended it rely on the misrepresentation because Machane knew it was completing the supplemental application and providing the requested information in connection with the underwriting of its application for insurance coverage. Finally, U.S. Fire established detrimental

reliance because it issued the policy based on the false information provided by Machane.

We are satisfied the court appropriately exercised its discretion by rescinding the policy rather than reforming it to afford a lower limit of liability. Rescission is "an equitable remedy, which properly depends on the totality of the circumstances in a given case and resides within the court's discretion." Id. at 143. In this case, U.S. Fire established it would not have issued the HNOA coverage if Machane provided accurate information regarding the rented vans. Under the circumstances, it would be inequitable to reform the policy to provide coverage U.S. Fire would not have provided. The court did not misapply its discretion by rescinding the Policy.

We are not persuaded by Korenfeld's argument that U.S. Fire should not be permitted to invoke the doctrine of equitable fraud based on the "concealment, misrepresentation, or fraud" provision contained in the policy. That provision states:

> This [c]overage [f]orm is void in any case of fraud by you at any time as it relates to this [c]overage [f]orm. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:
>
> a. This [c]overage [f]orm;

17

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this [c]overage [f]orm.

It is well settled that an insured may seek rescission based on equitable fraud. Upon rescission, the policy is void ab initio. Accordingly, if the policy is rescinded based on equitable fraud, the "concealment, misrepresentation, or fraud" provision contained in the policy would be inapplicable.

Moreover, the provision expressly states "[t]his [c]overage [f]orm is void in any case of fraud by you [Machane] at any time as it relates to this [c]overage [f]orm." Here, U.S. Fire contends the policy should be rescinded based on equitable fraud by Machane, as expressly permitted by the policy. The fact that the next sentence of the provision expands the scope also to include misrepresentations by Machane or "any other insured at any time" does not negate the first sentence of the policy provision.

Korenfeld's arguments relating to the interpretation and placement of exclusions in a policy of insurance and the reasonable expectations of the insured are inapt. This case does not involve the application of an exclusion, nor does it implicate the reasonable expectations of an insured in the face of, for example, an allegedly ambiguous or misleading policy of insurance. In this

18

case, the policy was rescinded based on the insured's material misrepresentation in response to an unambiguous, objective question on its application for insurance.

We are unpersuaded by Korenfeld's argument that the policy should not be rescinded because public policy favors financial protection of innocent victims of automobile accidents. This case involves optional HNOA coverage, not mandatory motor vehicle insurance required for owners of motor vehicles. Here, the vans were owned by Hertz, not Machane. Machane was not obligated to provide any insurance for vans it did not own.

To the extent we have not addressed any of Korenfeld's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1918-22